Dennis LIEVROUW, and Cindy Lievrouw, Plaintiffs-Respondents,

v.

Julie Ann ROTH, and Classified Insurance Corporation, Defendants-Appellants,

Robert DAVIS, Defendant.

Court of Appeals

*No. 89-1369. Submitted on briefs April 3, 1990.—Decided July 3, 1990.*

(Also reported in 459 N.W.2d 850.)

332

333

On behalf of the defendants-appellants, the cause was submitted on the briefs of *James P. Brennan* of *Brennan & Collins* of Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the briefs of *Todd M. Weir* and *Mark A. Grady* of *Otjen, Van Ert, Stangle, Lieb & Weir, S.C.* of Milwaukee.

Before Moser, P.J., Sullivan and Fine, JJ.

FINE, J. Julie Ann Roth and Classified Insurance Corporation appeal from a judgment entered on a jury verdict that found Roth to be ninety-five percent causally negligent in connection with an automobile accident

that injured Dennis Lievrouw. The jury found Lievrouw to be five percent causally negligent, and awarded him approximately $58,000 in compensatory damages and $5,000 in punitive damages.

Roth and Classified assert eight grounds for reversal. First, they contend that the trial court should not have admitted evidence that in October of 1982 Roth had killed a four-year-old pedestrian as the result of an automobile accident that occurred after she had consumed beer. Second, they argue that the trial court should not have permitted Lievrouw to testify that he believed he faced an emergency immediately prior to the collision, and that the trial court should not have instructed the jury on what constitutes negligence in an emergency. Third, Roth and Classified claim that the trial court erred in receiving the entire *Wisconsin Motorists Handbook* into evidence, and in permitting Lievrouw's counsel to read excerpts to the jury. Fourth, they submit that the trial court should not have permitted Lievrouw's medical expert to give an opinion on Lievrouw's percentage of permanent disability. Fifth, they claim that the trial court should not have instructed the jury on aggravation of an injury by medical malpractice. Sixth, Roth and Classified argue that the trial court abused its discretion by not permitting Classified's physician to re-examine Lievrouw. Seventh, they contend that the trial court should not have submitted the issue of punitive damages to the jury. Finally, Roth and Classified argue that the trial court improperly hindered their attorney's closing argument. We agree that the trial court should not have permitted the jury to consider an award of punitive damages, and we reverse on that issue. We affirm on all other issues.

## I.

Lievrouw was injured when the automobile he was driving collided with one being driven by Roth. The accident happened at around noon on April 23, 1985, when Lievrouw was driving southeast on West Fond du Lac Avenue in Milwaukee, and Roth was turning left from east-bound on North Bourbon Street to northwest on West Fond du Lac Avenue. Roth was returning home from a friend's house, where, according to her testimony, she drank two beers between 9:30 and noon that morning.

Lievrouw claimed that Roth went through a stop sign without stopping, and his version was supported by the testimony of an eyewitness, Jacalyn Lee Johnson, who estimated that both Roth and Lievrouw were driving at thirty miles per hour. Roth testified that she stopped at the stop sign, but told the jury that she never saw Lievrouw's car before the accident.

After the collision, Roth pulled into a nearby driveway between her house and the site of the accident, turned around, and returned to the accident scene. She then went home. According to her testimony, Roth told someone at the scene that she was going home to get the car's owner. Roth and the car's owner returned to the accident scene together.

The car's owner testified that when he saw Roth shortly after the accident she looked normal, although upset, and that she did not appear to be under the influence of alcohol. Johnson, however, testified that she believed that Roth was intoxicated. She told the jury that Roth's breath smelled from alcohol, that her speech was slurred, that her eyes were glassy, and that she appeared to be incoherent.

A police officer dispatched to the scene testified that while he could not "remember the exact details," he recalled asking Roth whether she had been drinking, and noted, without objection by counsel, that "she might have stated to me that she had a beer or so." The officer also testified that Roth told him that she went home before the officer arrived at the accident scene, but that he was "unclear whether she had to go home for a driver's license or for—get a held [sic] of the owner of the car." He told the jury that he "probably" smelled the odor of alcohol on her breath, "otherwise I wouldn't have asked her if she had been drinking." The officer did not have Roth perform any field-sobriety tests. He explained:

> In my opinion I didn't think she was under the influence and due to the fact that she had left the scene after the accident and went home, it could have been possible she stated to me that she was upset and had a quick drink, or that she could have consumed something while she was gone from the scene which would have affected that type of an arrest.

The officer admitted, however, that he did not recall her saying that she had a drink after the accident, and reiterated that his "personal observation of her" led him to believe "that she wasn't under the influence at the time." Roth testified that she did not drink anything at her house after the accident that morning.

Over defense objection, Lievrouw's attorney was permitted to ask Roth about an earlier accident:

Q The accident with [Lievrouw] on April 23, 1985, was not the first accident that you had been in where you had been drinking beer and then got into a car and drove and were in an accident?

A No, it wasn't.

**Q** In fact, October 2 of 1982 you had been drinking beer, and you got in an accident with a pedestrian; correct?

**A** Yes, that's correct.

**Q** And that pedestrian was killed?

**A** Yes, that's correct.

**Q** Is that correct? That was a four-year-old?

**Q** Yes.

## II.

### A. Punitive Damages

Although seventh in the list of claimed trial-court errors, Roth's argument that there was insufficient evidence to submit the punitive-damages question to the jury raises a significant issue that has never been squarely addressed in Wisconsin, namely, whether deliberately driving while alcohol-impaired warrants imposition of punitive damages.[1] Accordingly, we discuss it first.

Punitive damages are designed to punish and deter conduct that is "willful or wanton, in a reckless disregard of rights or interests." *See Brown v. Maxey,* 124 Wis. 2d 426, 433, 369 N.W.2d 677, 681 (1985). The Wisconsin Supreme Court has used the shorthand designation "outrageous" to describe this type of conduct. *Id.,* 124 Wis. 2d at 431 n.1, 369 N.W.2d at 680 n.1. Punitive damages may be awarded in automobile accident cases

---

[1]Courts elsewhere have reached conflicting results *via* a variety of analyses. *See* Annotation, *Intoxication of Automobile Driver as Basis for Awarding Punitive Damages,* 65 A.L.R.3d 656 (1975 & Aug. 1989 supp.).

whether or not the driver had been drinking. *See Franz v. Brennan,* 146 Wis. 2d 541, 546, 431 N.W.2d 711, 713 (Ct. App. 1988), *aff'd,* 150 Wis. 2d 1, 440 N.W.2d 562 (1989).

█

Punitive damages may not be awarded unless there is "clear and convincing evidence" that the defendant's conduct was "outrageous." *Brown,* 124 Wis. 2d at 433, 369 N.W.2d at 681. In order for conduct to be "outrageous" there must be "aggravating circumstances beyond ordinary negligence." *Id.,* 124 Wis. 2d at 432, 369 N.W.2d at 681. Even proof that the defendant's conduct was criminal might not be sufficient; the conduct must be so outrageous as to " 'require the added sanction of a punitive damage [award] to deter others from committing acts against human dignity.' " *Fahrenberg v. Tengel,* 96 Wis. 2d 211, 222, 291 N.W.2d 516, 521 (1980) (quoting *Entzminger v. Ford Motor Co.,* 47 Wis. 2d 751, 757–758, 177 N.W.2d 899, 903 (1970)). An award of punitive damages is thus "reserved for cases where the wrongfulness of the defendant's conduct is conspicuous . . . [so] that its wrongfulness is apparent to the person who engages in it." *Soderbeck v. Burnett County, Wis.,* 752 F.2d 285, 291 (7th Cir. 1985), *cert. denied,* 471 U.S. 1117. The reason is clear:

> If one needed great subtlety to realize that one had strayed into the forbidden zone where punitive damages are a sanction, the deterrent effect of such damages would be distorted. Some people would stray into the zone unknowingly; as to them the threat of punitive damages would not deter. Others would steer far clear of the zone, not knowing where it began; as to them lawful as well as unlawful conduct would be deterred.

*Ibid.*

Trial courts in Wisconsin have a significant responsibility in ensuring that a verdict question on punitive damages is not given to the jury unless the evidence "establishes a proper case" for their allowance. *Wangen v. Ford Motor Co.,* 97 Wis. 2d 260, 298, 294 N.W.2d 437, 457 (1980). *See also Brown,* 124 Wis. 2d at 432 n.2, 369 N.W.2d at 681 n.2; *Walter v. Cessna Aircraft Co.,* 121 Wis. 2d 221, 225–226, 358 N.W.2d 816, 819 (Ct. App. 1984). Thus, the trial court "should not submit the issue of punitive damages to the jury in the absence of evidence warranting a conclusion to a reasonable certainty that the party against whom punitive damages may be awarded acted with the requisite outrageous conduct." *Bank of Sun Prairie v. Esser,* 155 Wis. 2d 724, 735, 456 N.W.2d 585, 590 (1990). Stated another way, a question on punitive damages may not be given to the jury unless the trial court concludes that a reasonable jury could find from the evidence that entitlement to punitive damages has been proven by the middle burden of proof, "clear and convincing evidence." *See Brown,* 124 Wis. 2d at 433, 369 N.W.2d at 681. Whether there is sufficient evidence to submit a punitive-damage question to the jury is a legal matter that an appellate court must determine independently. *See Bank of Sun Prairie,* 155 Wis. 2d at 736, 456 N.W.2d at 590; *see also Burg v. Miniature Precision Components, Inc.,* 111 Wis. 2d 1, 12, 330 N.W.2d 192, 198 (1983) ("whether a party has met its burden of establishing a prima facie case is a question of law").[2]

---

[2]If, however, the issue was properly given to the jury, we must affirm a punitive-damage award when "there is any evidence from which the jury could have reasonably concluded that the plaintiff met his burden of proving that the defendant's con-

Conduct justifying an award of punitive damages can take two forms: (1) if the defendant intends to cause the harm, or (2) if the harm is the result of "a reckless or conscious disregard" of the rights of others. *Brown,* 124 Wis. 2d at 433, 369 N.W.2d at 681. Punitive damages may not be awarded, however, unless the "outrageous" conduct has caused or contributed to the plaintiff's damages. *Kehl v. Economy Fire & Casualty Co.,* 147 Wis. 2d 531, 534-538, 433 N.W.2d 279, 280-282 (Ct. App. 1988). Since there is no evidence here that Roth intended to injure Lievrouw, the focus of our inquiry is whether Lievrouw made out a prima facie case that Roth recklessly disregarded the rights of others by driving on the morning of April 23, 1985, and, if so, whether that was a cause of the accident.

Drunk driving is a terrible scourge. According to the National Highway Traffic Safety Administration, "[a]bout two in every five Americans will be involved in an alcohol related crash at some time in their lives." U.S. Dep't of Transp., Nat'l Highway Traffic Safety Admin., *Drunk Driving Facts* 3 (July 1989). Thus, for example, in 1988, more than 23,000 deaths in the United States were the result of alcohol related crashes. U.S. Dep't of Transp., Nat'l Highway Traffic Safety Admin., *Drunk Driving Facts* and *1988 Traffic Fatality Facts* 1 (July 1989). Additionally, it has been estimated that every year drunk drivers nationally "cause nearly one million personal injuries and more than five billion dollars in property damage." *Michigan Dept. of State Police v. Sitz,* 496 U.S. —, 110 S. Ct. 2481, 2485-2486, 110 L.Ed.2d 412, 420-421 (1990) (quoting 4 W. Lafave,

---

duct" warranted their imposition, when that evidence is viewed in a light most favorable to sustaining the award. *Brown,* 124 Wis. 2d at 433, 369 N.W.2d at 681.

*Search and Seizure: A Treatise on the Fourth Amendment* sec. 10.8(d), p. 71 [2d ed. 1987]). In Wisconsin, the numbers are equally grim. During 1988, for example, "527 drivers were killed, of which 461 were tested for blood alcohol content. 216 drivers had blood alcohol content of .10 or above. (legally intoxicated)." Wisconsin Dep't of Transp., Div. of Motor Vehicles, *1988 Wisconsin Traffic, Accident Facts & Trends.* Overall, Wisconsin's 1988 drunk-driving toll was 10,167 persons injured and 388 persons killed. Wisconsin Dep't of Transp., *Wisconsin 1988 Traffic Accident Facts* 103.

Intentionally driving while alcohol-impaired is the type of outrageous conduct that punitive damages should punish and can deter. *See Biswell v. Duncan,* 742 P.2d 80, 84–86 (Utah Ct. App. 1987). The legislature, however, has determined that impairment is a matter of degree, and—except for persons who have not attained the age of nineteen—Wisconsin permits driving with some blood alcohol content. Sec. 346.63(1) & (2m), Stats. Persons nineteen years or older may drive if their blood-alcohol concentration does not exceed either 0.1% by weight of alcohol in the blood, or 0.1 grams or more of alcohol in 210 liters of breath, sec. 346.63(1)(b), Stats., and as long as they are not "incapable of safely driving," sec. 346.63(1)(a), Stats.[3] *See also* sec. 885.235, Stats. (establishing chemical-analysis correlation-standards in connection with a person's status of either being under the influence of an intoxicant or having a certain blood-alcohol concentration). Here, the degree of Roth's impairment, if any, was not established by either scientific evidence or by the circumstances surrounding the accident. *See Canton v. Hauge,* 696 P.2d 1126, 1129 (Or.

[3]Effective January 1, 1991, the standards for drivers of commercial vehicles will be more stringent. *See* 1989 Wis. Act 105 secs. 185, 246–249, 282, 287.

Ct. App. 1985) (driving at speeds up to 90 miles per hour at midnight through a residential/commercial area where there was restricted visibility and the speed limit was 35 miles per hour could permit the jury to find that the driver was under the influence of alcohol even though he was not legally drunk). To the contrary, the evidence of Roth's alleged state of inebriation was, taken as a whole, sketchy and contradictory; it hardly met the middle-burden threshold of being "clear and convincing." *See Brown,* 124 Wis. 2d at 433, 369 N.W.2d at 681.

The appellate record here also lacks clear and convincing evidence that Roth's drinking, or her alleged state of inebriation, either caused or contributed to the accident, or that it aggravated Lievrouw's injuries. *See Kehl,* 147 Wis. 2d at 534–538, 433 N.W.2d at 280–282 (conduct for which punitive damages are awarded must have caused or contributed to plaintiff's injuries). Lievrouw, therefore, failed to establish a prima facie case that Roth's drinking was a cause of the accident. *See Merco Distrib. Corp. v. Commercial Police Alarm Co.,* 84 Wis. 2d 455, 460, 267 N.W.2d 652, 655 (1978). As *Merco Distributing* notes:

> "A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant."

*Ibid.* (quoting W. Prosser, *Law of Torts* 241 [4th ed. 1971]).

In conclusion, although driving while under the influence of an intoxicant will support an award of punitive damages in an appropriate case, the evidence adduced at trial here was not sufficient to permit a rea-

347

sonable jury to find by the middle burden of proof either that Roth was alcohol-impaired at the time of the accident, or that her drinking was a cause of the collision. Additionally, Lievrouw failed to adduce clear and convincing evidence that Roth's driving was otherwise "outrageous." Since Lievrouw did not, therefore, establish a prima facie case for punitive damages, that issue should not have been submitted to the jury. *See Maskrey v. Volkswagenwerk Aktiengesellschaft,* 125 Wis. 2d 145, 161-162, 370 N.W.2d 815, 823-824 (Ct. App. 1985). Thus, we leave for another day the complex issues of what degree of intoxicant-caused driving impairment, if causal of a plaintiff's injuries, would support an award of punitive damages, and how that impairment is to be measured. The jury's award of punitive damages is reversed.

## B. Prior Accident

Roth and Classified claim that the trial court improperly admitted Roth's testimony concerning the 1982 accident. A trial court's decision to admit or exclude evidence is a discretionary determination that will not be upset on appeal if it has "a reasonable basis" and was made " 'in accordance with accepted legal standards and in accordance with the facts of record.' " *State v. Pharr,* 115 Wis. 2d 334, 342, 340 N.W.2d 498, 501 (1983) (quoting *State v. Wollman,* 86 Wis. 2d 459, 464, 273 N.W.2d 225, 228 (1979)). Roth's testimony about the earlier accident was admitted on the punitive-damage claim in order to show that she was aware of the dangers of driving while intoxicated. This is a permissible purpose under Rule 904.04(2), Stats., which provides:

348

OTHER CRIMES, WRONGS, OR ACTS. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Although generally used in criminal cases, Rule 904.04(2), Stats., is also applicable in civil cases. *See Eaves v. Penn,* 587 F.2d 453, 463-464 (10th Cir. 1978) (applying Rule 404(b) of the Federal Rules of Evidence, the analogue to Rule 904.04(2), Stats.); *cf. Callan v. Peters Constr. Co.,* 94 Wis. 2d 225, 231-233, 288 N.W.2d 146, 149-150 (Ct. App. 1979) (prior accident at shopping mall admissible to prove notice of an unsafe condition, Rule 904.04(2) not discussed). Evidence of other incidents of drunk driving by a defendant is thus admissible in a civil action seeking compensatory and punitive damages. *Moore v. Thompson,* 336 S.E.2d 749, 751 (Ga. 1985) (per curiam) (applying a rationale similar to the one behind Rule 904.04(2), Stats.). *Cf. United States v. Fleming,* 739 F.2d 945, 949 (4th Cir. 1984), *cert. denied,* 469 U.S. 1193 (prior drunk-driving convictions relevant to show that defendant charged with murder by intoxicated use of a motor vehicle was aware of the danger of driving while intoxicated). Evidence of Roth's prior accident in 1982 was admissible under Rule 904.04(2).

A conclusion that evidence is admissible under Rule 904.04(2), Stats., does not end the inquiry. The evidence may not be received if the opponent can show that its "probative value is substantially outweighed by the danger of unfair prejudice." Rule 904.03, Stats.; *see Pharr,*

349

115 Wis. 2d at 347, 340 N.W.2d at 503–504. The rules, however, favor admissibility. *See* S. Saltzburg & K. Redden, *Federal Rules of Evidence Manual* 184 (4th ed. 1986) (analyzing the Federal Rules of Evidence). When Congress wrote Rule 404(b) of the Federal Rules of Evidence, upon which Rule 904.04(2) was patterned without substantive difference, it "was not nearly so concerned with the potential prejudicial effect of Rule 404(b) evidence as it was with ensuring that restrictions would not be placed on the admission of such evidence." *Huddleston v. United States,* 485 U.S. 681, 688–689 (1988).

The trial court's analysis of whether to admit Roth's testimony concerning the 1982 fatal accident conformed with the law; there was no abuse of discretion. Although we have held that this was not a proper case for punitive damages, the trial court offered, with Lievrouw's agreement: (1) to instruct the jury that the testimony was being received in connection with the punitive-damage claim only; and (2) to let the jury decide compensatory damages and punitive damages sequentially so it would not have been aware of the 1982 incident when it was deciding whether the defendants were liable for compensatory damages, or their amount, if any. Since the defendants rejected both alternatives, they cannot now claim reversible error. *See Treps v. City of Racine,* 73 Wis. 2d 611, 619, 243 N.W.2d 520, 524 (1976) (failure to request cautionary instruction waives "objection at the appellate level.").[4]

---

[4]Since the defendants rejected the trial court's offer to give the jury a cautionary instruction, and, because the issue was not briefed, we need not decide whether the proposed sequential trial would have violated Rule 805.05(2), Stats., which "[u]nlike Federal Rule [of Civil Procedure] 42, . . . does not permit bifurcation

## C. Testimony and Instruction on Emergency

Roth and Classified contend that the trial court improperly permitted Lievrouw to testify that he believed he faced an emergency when he first saw Roth's car, arguing that this was a legal conclusion. Additionally, they argue that the trial court should not have read to the jury Wis JI—Civil 1015, *Negligence in an Emergency*. We disagree on both points.

1. Rule 907.01, Stats., permits a witness who "is not testifying as an expert" to testify "in the form of opinions or inferences" that are:

> (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue.

This provision restates the Wisconsin common-law rule that permitted a non-expert witness "to give a shorthand rendition of a total situation." *See York v. State,* 45 Wis. 2d 550, 559, 173 N.W.2d 693, 698 (1970) (cited by the Judicial Council Committee's Note to Rule 907.01, 59 Wis. 2d at R205).

An opinion or inference authorized by Rule 907.01, Stats., is admissible even though it "embraces an ultimate issue to be decided" by the jury. Rule 907.04, Stats.; *Quinlan v. Coombs,* 105 Wis. 2d 330, 338–340, 314 N.W.2d 125, 130 (Ct. App. 1981).[5] The "ultimate issue" may not, however, be one that is a legal concept for

---

of issues, but only separate trial of discrete claims." Judicial Council Committee's Note, 1974, 67 Wis. 2d 693.

[5]Rule 907.04, Stats., provides:

**Opinion on ultimate issue.** Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

which the jury needs definitional instructions. *See Roe v. State,* 95 Wis. 2d 226, 248, 290 N.W.2d 291, 302–303 (1980); *see also Strong v. E.I. DuPont de Nemours Co.,* 667 F.2d 682, 685–686 (8th Cir. 1981) and *Montgomery v. Aetna Casualty & Sur. Co.,* 898 F.2d 1537, 1541 (11th Cir. 1990) (both federal cases applying Rule 704 of the Federal Rules of Evidence, the federal analogue to Rule 907.04. Thus, for example, a witness' opinion that there was an "emergency" (which is permissible under Rule 907.04) differs from a conclusion that someone was "negligent" (which is not permissible under Rule 907.04) because, unlike "emergency," which the law does not define for juries, *see* Wis JI—Civil 1015, *Negligence in an Emergency,* "negligence" has prerequisite terms-of-art elements about which the jury must be instructed, *see* Wis JI—Civil 1005, *Negligence: Defined.*

Lievrouw's opinion that he faced an emergency was based on his perception of the events as they were unfolding and was helpful to the jury in determining "a fact in issue," namely, whether he was contributorily negligent. It was not a legal concept for which a definitional instruction was required. Accordingly, the trial court did not err in overruling the defendants' objection.

2. Roth and Classified contend that the trial court should not have read Wis JI—1015, *Negligence in an Emergency* to the jury. They correctly point out that the instruction is only appropriate when the driver's management and control is at issue, *see Schmit v. Sekach,* 29 Wis. 2d 281, 289, 139 N.W.2d 88, 92 (1966), and argue that since the trial court instructed the jury on reasonable speed with respect to both drivers, the emergency

instruction should not have been given.[6] We do not agree.

First, a driver may fail to exercise ordinary care with respect to both speed *and* management and control. Second, Lievrouw first testified that he never slowed down before he hit Roth, but later told the jury that he applied his brakes when he saw Roth go through the stop sign, and claimed that he "took action to avoid the accident." Therefore, the issue of whether Lievrouw properly handled his car was an issue to be decided by the jury. *See Leckwee v. Gibson,* 90 Wis. 2d 275, 287–288, 280 N.W.2d 186, 191 (1979). Since there was evidence from which the jury could conclude that Lievrouw faced an emergency not of his own making, and since the trial court properly instructed the jury that the emergency doctrine does not apply to any person whose negligence wholly or in part created the emergency, *see Tombal v. Farmers Ins. Exch.,* 62 Wis. 2d 64, 70, 214 N.W.2d 291, 294–295 (1974), there was no error.

## D. The Wisconsin Motorists Handbook

Defendants' next claim of error is that the trial court "should not have received the entire Wisconsin Manual for Motorists into evidence and allowed [Lievrouw]'s counsel to read certain portions of that manual in front of the jury as those portions were hearsay and without proper foundation in the record." The trial court received into evidence a photographically-reproduced copy of a multi-page document entitled *Wis-*

[6]Their brief puts it this way:

If the trial court felt there was sufficient evidence for the jury to consider whether Dennis Lievrouw was guilty of imprudent speed then it should not have submitted the emergency instruction to the jury.

*consin Motorists Handbook* and permitted Lievrouw's attorney to read portions from page 50 of the exhibit during his examination of Roth. The excerpts were the document's assessment of alcohol's effect on a person's driving ability. Later, the trial court instructed the jury that the "[p]ages of the *Wisconsin Motorists Handbook* concerning alcohol have been received in evidence and may be considered in arriving at a verdict." These were the only pages brought to the jury's attention, and, bearing this in mind, we discuss the defendants' two objections to the manual, foundation and hearsay, in turn.

1. An item may not be received into evidence unless it is what it purports to be. *See* Rule 909.01, Stats.[7] Rule 909.02, Stats., provides that "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to . . . (5) OFFICIAL PUBLICATIONS. Books, pamphlets or other publications purporting to be issued by public authority." The *Wisconsin Motorists Handbook* is—on its face—such a document, and, since there was no evidence that the exhibit was not what it purported to be, the trial court properly held that it was authenticated.[8]

---

[7]Rule 909.01, Stats., provides:

**General provision.** The requirements of authentication or identification as a condition precedent to admissibility are satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

[8]The copy of the document was its "duplicate," *see* Rule 910.01(4), Stats., and was thus "admissible to the same extent as [the] original," since there were no circumstances either raising any question as to the original's authenticity or making it unfair to receive the copy rather than the original, *see* Rule 910.03, Stats.

354

2. Rule 908.03(8), Stats., recognizes an exception from the rule against hearsay for:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . (b) matters observed pursuant to duty imposed by law, or (c) in civil cases and against the state in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

The *Wisconsin Motorists Handbook* is published by the Department of Transportation, Division of Motor Vehicles, and the Department is charged with the administration and enforcement of the laws relating to the licensing of drivers in this state. Sec. 343.02, Stats. The Department also has the responsibility to educate Wisconsin drivers about the dangers of driving while under the influence of an intoxicant or a controlled substance. Sec. 346.637, Stats. Admission of the pages from the *Wisconsin Motorists Handbook* that concerned alcohol and its effect on a person's driving ability was thus admissible under Rule 908.03(8), Stats. *See State v. Hinz,* 121 Wis. 2d 282, 288, 360 N.W.2d 56, 60 (Ct. App. 1984) (relying on Rule 908.03(8)(c), Stats., for the admission of a blood-alcohol chart from a Department of Transportation pamphlet used to train breath examiner specialists); *Roth v. Black & Decker, U.S., Inc.,* 737 F.2d 779, 783 (8th Cir. 1984) (reports prepared for or by the U.S. Consumer Products Safety Commission properly admitted under Rule 803(8)(C) of the Federal Rules of Evidence, the federal analogue to Rule 908.03(8)(c), Stats.).[9]

---

[9]The *Wisconsin Motorists Handbook* would have also been

### E. Medical Opinion of Lievrouw's Disability

Defendants' next claim of error concerns testimony by Dr. James Stoll, an orthopedic surgeon, that Lievrouw had a seven-percent permanent disability as a result of the accident. Dr. Stoll's medical report stated: "If one were to use Wisconsin Occupation Codes as a guideline for disability based on his stiffness, range of motion and limitation of activities, I would give him a range of 7% permanent partial disability rating."[10] During his trial testimony, Dr. Stoll also made reference to the Code, but, after the defendants objected, he gave the same seven-percent-disability opinion after, in his words, "removing the occupational code." Roth and Classified argue that the worker's compensation code "has no relevancy" to the issues here because this case is "not a worker's compensation case."

A witness who has expertise in a particular occupation or profession may give an opinion properly supported by that expertise in order to "assist the trier of fact to understand the evidence," Rule 907.02, Stats., and, as already noted in Part II.C.1., *ante,* the opinion

admissible under the "learned treatise" exception to the rule against hearsay, Rule 908.03(18), Stats., which provides that "[a] published . . . pamphlet on a subject of . . . science . . . is admissible as tending to prove the truth of a matter stated therein if the judge takes judicial notice . . . that the writer of the statement in the . . . pamphlet is recognized in his profession or calling as an expert in the subject." *Cf. Schmiedeck v. Gerard,* 42 Wis. 2d 135, 141 n.9, 166 N.W.2d 136, 139 n.9 (1969) (recognizing that the *Wisconsin's Manual for Motorists* was a proper subject for judicial notice).

[10]Dr. Stoll was apparently referring to Wis. Adm. Code sec. Ind. 80.32.

may embrace the ultimate issue to be decided, Rule 907.04, Stats. The *sine qua non* of the admissibility of an expert opinion is whether it will be helpful to the jury in deciding the issue to which it is addressed. S. Saltzburg & K. Redden, *supra,* at 632. Other than advancing their conclusion, without the citation of supporting legal authority, the defendants have not explained why receipt of Dr. Stoll's testimony was error, and we perceive none.

F. Instruction on Aggravation by Medical Malpractice

Dr. William J. LaJoie, an expert retained by Roth and Classified, testified in response to questions asked by defense counsel that Lievrouw would have had a better recovery if he had been treated earlier and differently by his physicians, even though, when asked by Lievrouw's counsel, he told the jury that he was not accusing them of medical malpractice. At Lievrouw's request, the trial court gave the following pattern jury instruction:

> If the plaintiff's injuries were aggravated or not diminished as much as they otherwise should have been as a result of the negligence or mistake of his doctor, and if the plaintiff exercised ordinary care in selecting the doctor, which he did in this case, then your answer to the question on damages for personal injuries should be for the entire damages sustained by Dennis Lievrouw and should not be decreased because of the doctor's negligence.

*See* Wis JI—Civil 1710. Roth and Classified claim this was error because there was no expert testimony that any of Lievrouw's treating physicians were guilty of malpractice. We disagree.

357

Dr. LaJoie's testimony was designed to leave the jury with the impression that part of Lievrouw's injuries were caused by his treating physicians and not by the accident. If believed, this testimony could have led the jury to reduce the award of compensatory damages to Lievrouw accordingly. Such a reduction would have been contrary to the long-established principle that a defendant who causes injury is responsible for any aggravation that results from improper medical treatment, as long as the plaintiff has "exercised good faith and due care" in selecting his or her treating physicians. *See Fouse v. Persons,* 80 Wis. 2d 390, 397–398, 259 N.W.2d 92, 95 (1977). The trial court's instruction set matters right. It was not error.

## G. Second Medical Examination

Roth and Classified also claim that the trial court abused its discretion by refusing to require Lievrouw to submit to a second medical examination by Classified's physician. The request for the re-examination was made by motion that was filed on February 27, 1989. The motion was heard on March 6, 1989, just one week before the March 13th trial date. Defense counsel argues that he was entitled to the second examination because the first examination was two years old, and because the trial, originally scheduled for March, 1987, had been adjourned five times. The trial court denied defendants' motion, concluding that the request came "too late."

Rule 804.10(1), Stats., permits the trial court to order a "party to submit to a physical or mental examination" upon a showing of "cause." Trial court rulings on discovery are discretionary. *Frankard v. Amoco Oil Co.,* 116 Wis. 2d 254, 267, 342 N.W.2d 247, 253 (Ct. App.

1983). They will not be overturned on appeal if they are consistent with the facts of record and established legal principles. *See Pharr,* 115 Wis. 2d at 342, 340 N.W.2d at 501. The March 13th trial date was set on November 1, 1988, and, according to a notation on the judgment roll, the case was given "No. 1" status. If the defendants wanted to have Lievrouw re-examined, they should not have waited until the proverbial eleventh hour to make their motion. The trial court did not abuse its discretion in denying the defendants' motion.

### H. Closing Argument/Jury Verdict Form

As their last assertions of error, Roth and Classified contend that the trial court improperly restricted defense counsel's closing argument in two respects, and that it should have left designated spaces for more than two dissents on the verdict form. We discuss these matters in sequence.

1. In the course of his closing argument to the jury, defense counsel, referring to Lievrouw and Roth, said: "If it was up to me, I'd hold both of these drivers equally at fault for this collision." Lievrouw's attorney objected. The trial court sustained the objection, noting: "Counsel, it's not your opinion." Defense counsel then told the jury:

> It's my opinion, and I would urge you to find in your preparing your verdict, that both drivers are at fault for the collision.

No objection was made to this second statement.

Although it is improper for an attorney to argue his or her own personal opinion of a case, *see Younger v. Rosenow Paper & Supply Co.,* 63 Wis. 2d 548, 556–557,

217 N.W.2d 841, 845 (1974), the attorney may argue that in his or her view the evidence supports a certain result. While counsel's first statement to the jury could have been accepted as merely his opinion of what the evidence proved, the trial court's interpretation to the contrary was reasonable. There was no abuse of discretion, *see Fields v. Creek,* 21 Wis. 2d 562, 572, 124 N.W.2d 599, 604 (1963) ("The content of the arguments by counsel to the jury is a matter resting in the discretion of the trial court."), especially since counsel was able to make the almost identical argument a few moments later. Any adverse effect on the defendants' case was *de minimis. See Younger,* 63 Wis. 2d at 557, 124 N.W.2d at 845.

2. Later in defense counsel's argument, he told the jury that although there were only two specifically designated spaces for dissenting jurors at the foot of the verdict form, that did "not mean that only two of you can dissent" and that "[if] six of you feel one way, and six of you feel the other way—." He was interrupted by an objection from Lievrouw's attorney, which was sustained by the trial court. Prior to closing arguments, the trial court had appropriately instructed the jury in accordance with Wis JI—Civil 180:

> Agreement by ten or more jurors is sufficient to become the verdict of the jury. Jurors have a duty to consult with one another and to deliberate for the purpose of reaching agreement. If you can do so consistently with your duty as a juror, at least the same ten jurors should concur in all the answers made. I ask you to be unanimous if you can.
>
> At the foot of the verdict you will find a place provided where dissenting jurors, if there be any, will sign their names and state the answer or answers with which they do not agree. Either the blank lines or the space below may be used for that purpose.

360

*See Kowalke v. Farmers Mut. Auto. Ins. Co.,* 3 Wis. 2d 389, 401–403, 88 N.W.2d 747, 754–755 (1958).

A jury in a civil case cannot return an acceptable verdict unless at least "the same five-sixths of the jurors . . . agree on all the questions" with respect to each claim. Rule 805.09(2), Stats. While it is error to tell the jury that they *must* agree, *see Kasper v. Kocher,* 240 Wis. 629, 636–637, 4 N.W.2d 158, 161–162 (1942), it is also improper for trial counsel to lure jurors into the belief that a verdict agreed to by less than five-sixths of their number is one that can be received by the court. Counsel's statement to the jury was an invitation for a mistrial and was properly stopped.

3. Roth and Classified also argue that by providing only two designated lines for dissenting jurors, the trial court in effect forced the jury to agree to its verdict. We disagree. *See Kowalke,* 3 Wis. 2d at 403, 88 N.W.2d at 754–755.

### III.

The judgment of the circuit court is affirmed in all respects other than the award of punitive damages. The case is remanded with directions that the punitive damage award be vacated and the claim dismissed.

*By the Court.*—Judgment affirmed in part, reversed in part, and cause remanded.