SHIRLEY S. ABRAHAMSON, C.J.
¶ 46. (dissenting). I agree with Justice Prosser's dissent that it was error for the circuit court to admit the results of the *105 defendant's preliminary breath test (PBT)[1] as evidence and that it was error for the circuit court to use the modified jury instruction.[2] I join Justice Prosser's dissent.
¶ 47. The majority opinion assumes that the admission of the PBT and the modified jury instruction were erroneous.[3]
¶ 48. Justice Ziegler's concurrence agrees with the majority opinion that the admission of the PBT results can be assumed to be error. But the concurrence goes further, concluding that the introduction of the PBT was indeed erroneous; "the PBT results were inadmissible as a matter of law." Concurrence, ¶ 43.[4] This concurrence is consistent with Justice Ziegler's concurrence in State v. Fischer, 2010 WI 6, ¶ 37, 322 Wis. 2d 265, 778 N.W.2d 629, which states that "as a matter of law PBT results are neither reliable nor admissible for the purpose of confirming or dispelling a defendant's specific alcohol concentration."
¶ 49. Thus six justices — Justice Ann Walsh Bradley, Justice David Prosser, Justice Patience Roggensack, Justice Annette Kingsland Ziegler, Justice Michael Gableman, and I — agree that the circuit court erred in admitting the PBT results in the present case.
¶ 50. The majority opinion (joined by Justice Ziegler) declares the assumed errors to be harmless.[5] In contrast, Justice Prosser's dissent concludes that the errors in the instant case were not harmless.[6] Once *106 again I agree with the dissent. The PBT results and erroneous jury instruction were central to the prosecution's case; the errors were prejudicial.
¶ 51. I write separately, however, to highlight an additional error, namely the admission of the expert testimony of Dr. William Falco. The doctor was allowed to give an expert opinion that the defendant was "intoxicated" when he was in the emergency room. Such testimony is barred by our jurisprudence regarding the limits of expert opinion testimony
¶ 52. The State did not have to prove beyond a reasonable doubt that the defendant was "intoxicated." Rather, the State had to prove beyond a reasonable doubt that the defendant was "under the influence of an intoxicant" while operating the vehicle.[7]
¶ 53. "Under the influence of an intoxicant" is a legal term of art defined in Wis. Stat. § 939.22(42) to mean "the actor's ability to operate a vehicle ... is materially impaired because of his or her consumption of an alcoholic beverage . . . ."
¶ 54. The legal definition of "under the influence of an intoxicant" is not necessarily the same as a doctor's use of the word "intoxicated" for purposes of determining proper medical diagnosis or treatment in a hospital, or the same as the common usage of the word "intoxicated."
¶ 55. I now turn to the Wisconsin rules of evidence governing expert opinion testimony.
¶ 56. Wisconsin Stat. § 907.04 provides as follows:
*107 Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.[8]
*108 ¶ 57. As the majority opinion acknowledges, an expert witness cannot give opinion testimony on an ultimate issue "that is a legal concept for which the jury needs definitional instructions,"[9] although the expert may give opinion testimony as to an "ultimate issue to be decided by the trier of fact." The phrase "under the influence of an intoxicant" is a legal concept and a jury is instructed regarding the legal definition of "under the influence of an intoxicant."
¶ 58. The majority opinion acknowledges that the ultimate issue of whether the defendant was "under the influence of an intoxicant" under Wis. Stat. § 940.09(1)(a) was one requiring a specific, definitional jury instruction. Wisconsin JI — Criminal 1185, which was given to the jury in the instant case,[10] defines "under the influence of an intoxicant" for the jury as follows:
"Under the influence of an intoxicant" means that the defendant's ability to operate a vehicle was materially impaired because of consumption of an alcoholic beverage.
Not every person who has consumed alcoholic beverages is "under the influence" as that term is used here. What must be established is that the person has consumed a sufficient amount of alcohol to cause the person to be less able to exercise the clear judgment and steady hand necessary to handle and control a motor vehicle.
It is not required that impaired ability to operate be demonstrated by particular acts of unsafe driving. *109 What is required, is that the person's ability to safely control the vehicle be materially impaired (footnote omitted).
¶ 59. In the instant case, the doctor's testimony used the term "intoxication" in its medical sense, not the sense of the legal term of art "under the influence of an intoxicant" as defined in the statutes and the jury instruction. Dr. Falco testified that when the defendant entered the emergency room, in his expert opinion the defendant was intoxicated. The exchange between the prosecutor and the doctor, over the defense's objection, ensued as follows:
[PROSECUTOR]: Doctor, over the 13 years where you had occasion to treat accident patients that have consumed alcohol, were you able to make a diagnosis of whether or not they were under the influence of alcohol?
[DOCTOR]: Yes, several times.
[PROSECUTOR]: Do you believe you're qualified to in this case render that opinion?
[DOCTOR]: I do. I mean, I see intoxicated patients not in accidents pretty much on a daily basis that I'm—
[PROSECUTOR]: And when you're looking at those patients, what are those things that you are looking at? What are the factors? What are the symptoms of alcohol intoxication?
[DOCTOR]: Well, their behavior; their — you know, the —obviously the smell of alcohol on their breath; their speech, the clarity of their speech; you know, if they had redness to their eyes; their ability to ambulate or, you know, walk with the steady gait, things like that.
[PROSECUTOR]: And based upon your treatment, based on your experience and medical practice as an *110 emergency room physician, and your contact and examination and assessment of this patient, [the defendant], do you have an opinion as to his state of sobriety?
[DOCTOR]: I do.
[PROSECUTOR]: And what is your opinion?
[The defense objected and was overruled.]
[DOCTOR]: I believe he was intoxicated at the time.
[PROSECUTOR]: And do you hold that opinion to a reasonable degree of scientific and medical certainty?
[DOCTOR]: I do.
¶ 60. Expert opinion testimony? Check. Ultimate issue in the case? Check. Requiring a definitional jury instruction? Check.
¶ 61. Nonetheless, the majority opinion in the instant case permits the doctor's testimony about the defendant's intoxication when he entered the emergency room.
¶ 62. The majority opinion creatively but fallaciously reasons that the testimony is admissible because the doctor "never offered any opinion as to [the defendant's] condition or level of intoxication at the time of the accident."[11]
¶ 63. The State defends the admission of the doctor's testimony on the grounds that the doctor never offered an opinion as to whether the defendant's ability to safely control the vehicle was materially impaired.
¶ 64. True, the doctor did not express an opinion about the defendant's intoxication at the time of the accident or about the defendant's ability to operate a *111 vehicle. So, I ask, what is the relevance of the doctor's expert opinion about the defendant's intoxication in the emergency room? Is it relevant because it enables a jury to infer from the doctor's testimony that the defendant, who was intoxicated at the hospital, had a materially impaired ability to operate a vehicle at the time of the accident? It seems to me this must be the unstated rationale. Is this inference permissible? No! Why not? Because the doctor's medical definition of "intoxicated" for purposes of medical diagnosis and treatment at the emergency room is different than the legal definition of "under the influence of an intoxicant."
¶ 65. Admitting the doctor's expert testimony in the present case leads the jury to the mistaken belief that "intoxication" as used by a doctor as a medical term is the same as the legal term of art "under the influence of an intoxicant."
¶ 66. How can the jury make the inferential leap from the doctor's expert opinion about intoxication for medical diagnosis and treatment purposes to finding beyond a reasonable doubt that the defendant was "under the influence of an intoxicant" as a defined legal element of the crime?
¶ 67. The doctor's testimony therefore does not assist the trier of fact under the relevance-assistance standard of Wis. Stat. § 907.02(1).[12] Indeed, the doctor's testimony confuses, rather than assists, the jury.
*112 ¶ 68. To avoid jury confusion, the rules of evidence and the case law militate against the admission of expert testimony on legal concepts or terms of art. Analyzing our case law, Professor Blinka's treatise wisely advises that when weighing whether expert testimony phrased in terms of legal standards is admissible, "a prime consideration is whether the concept under consideration is a peculiarly legal construct or one that is also rooted in common usage."[13]
¶ 69. Professor Blinka cites Lievrouw v. Roth, 157 Wis. 2d 332, 351-52, 459 N.W.2d 850 (Ct. App. 1990), as does the majority opinion.[14] The Lievrouw court ruled that an expert witness's opinion may not be admissible on a "legal concept for which the jury needs definitional instructions." In Lievrouw, the court determined that a witness's opinion regarding the existence of an "emergency" was admissible because "emergency" was not defined for the jury and was not a "term of art."[15]
¶ 70. By admitting the doctor's expert opinion testimony on the defendant's intoxication, the circuit court permitted exactly the kind of confusing expert testimony on an ultimate legal concept that was held inadmissible under Lievrouw.
¶ 71. More can be and has been written on the meaning, application, continued vitality, and nuances of Wis. Stat. § 907.04 and the proper phrasing of questions *113 for the expert to comply with the rule. For the purposes of this dissent in the present case, I do not write on the rule at length. I think it important to engage this issue, point out the problems with the majority opinion's discussion, and foster discussion of the rule.
¶ 72. For the foregoing reasons, I join Justice Prosser's dissent and write separately.

 Justice Prosser's dissent, ¶¶ 96-111.

 Justice Prosser's dissent, ¶¶ 112-118.

 Majority op., ¶ 4.

 See also Justice Prosser's dissent, ¶ 97 (quoting Justice Ziegler's concurrence).

 Majority op., ¶ 5.

 Justice Prosser's dissent, ¶¶ 119-134.

 See Wis. Stat. § 940.09(1)(a) (defining the crime of "caus[ing] the death of another by the operation or handling of a vehicle while under the influence of an intoxicant").

 The 1974 Judicial Council Committee's Note to § 907.04, Wisconsin Rules of Evidence, 59 Wis. 2d R211, states that the rule is consistent with Rabata v. Dohner, 45 Wis. 2d 111, 172 N.W.2d 409 (1969). The court declared in Rabata, 45 Wis. 2d at 125 (citing Charles T. McCormick, Some Observations Upon the Opinion Rule and Expert Testimony, 23 Tex. L. Rev. 109, 118, 119 (1944)), that opinion testimony on ultimate issues could be barred if phrased as a legal term of art:
[A] court, even though not banning opinions on an ultimate issue, might nevertheless properly condemn a question phrased in terms of a legal criterion which could be misunderstood by the laymen on the jury. Such questions as, "Did X have sufficient mental capacity to make a will," or "Was X negligent," would properly be condemned on this basis — that they would confuse the jury rather than assist it — and be excluded from evidence.
Wis. Stat. § 907.04 adopted Federal Rule of Evidence 704 verbatim.
Federal Rule 704 was amended in 1984 to add subsection (b) as follows:
Rule 704. Opinion on an Ultimate Issue
(a) In General — Not Automatically Objectionable. An opinion is not objectionable just because it embraces an ultimate issue.
(b) Exception. In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone.
For a discussion of the Federal Rule, see Charles Alan Wright et al., 29 Federal Practice & Procedure: Evidence § 6282 (2d ed. 1997 & Supp.); 1 McCormick On Evidence § 12 (Kenneth S. Broun ed., 7th ed. 2013).
For other rules of evidence governing admissibility of expert opinion testimony, see Wis. Stat. ch. 907.

 Majority op., ¶¶ 26-27 (citing Wis. Stat. § 907.04 & Lievrouw v. Roth, 157 Wis. 2d 332, 351-52, 459 N.W.2d 850 (Ct. App. 1990)).

 See majority op., ¶ 2.

 Majority op., ¶ 25 (emphasis added).

 Wisconsin Stat. § 907.02(1) provides:
(1) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if the testimony is based upon sufficient facts or data, the testimony is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case.
*112 The rules of evidence thus exclude the doctor's opinion in the present case, not only as violating Wis. Stat. § 907.04 and our case law, but also as not helpful to the trier of fact and as a waste of time.

 7 Daniel D. Blinka, Wisconsin Practice Series: Wisconsin Evidence § 702.603 (3d ed. 2008).

 Majority op., ¶¶ 26-27 (citing Wis. Stat. § 907.04 and Lievrouw, 157 Wis. 2d at 351-52).

 Lievrouw, 157 Wis. 2d at 351-52.