STATE of Wisconsin, Plaintiff-Respondent,

v.

Todd M. STARK, Defendant-Appellant.

Court of Appeals

*No. 90–1631–CR. Oral argument March 5, 1991.—Decided April 17, 1991.*

(Also reported in 470 N.W.2d 317.)

537

On behalf of the defendant-appellant, there were briefs and oral argument by *Yolanda I. Lehner* of *Julian, Musial & Wettersten, S.C.,* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Jerome S. Schmidt,* assistant attorney general, and oral argument by *Jerome S. Schmidt.*

Before Nettesheim, P.J., Brown and Anderson, JJ.

BROWN, J.    Todd M. Stark appeals a jury verdict of guilty to a charge of first-degree sexual assault to a four-year-old girl (A.M.), contrary to sec. 940.225(1)(d), Stats. (1987-88).[2] Stark argues that the four-month period contained in the information was overly broad regarding the time in which the crime was alleged to have been committed. Stark observes that the time frame could have been narrowed to thirteen days. We agree, and we hold that the state violated its duty to inform the defendant, within reasonable limits, of the time when the offense charged was alleged to have been committed. However, we also hold that the error was harmless. We further determine that the evidence was sufficient. We affirm.

The factual scenario relating to the first issue is as follows. Stark lived with A.M. and A.M.'s mother for a

---

[2]Section 940.225(1)(d), Stats. (1987-88), was repealed effective July 1, 1989. Its provisions prohibiting sexual contact or sexual intercourse with a person twelve years of age or younger were transferred to and revised in sec. 948.02, Stats. *See* sec. 55, 1987 Wis. Act 332.

period of time. A complaint was filed on November 11, 1987. It alleged that between October 1986 and January 10, 1987, Stark had sexual contact with A.M. The complaint explained that A.M. believed the incident occurred prior to her January 10 birthday and while it was cold outside. The complainant, a police officer, averred this to be the reason for the October to January 10 time frame.

The preliminary examination took place on January 11, 1988. At this hearing, both A.M. and her mother testified. A.M. stated that the assault took place while Stark lived with her mother and her in a residence on Jackson Street in Sheboygan Falls. She also testified that the incident occurred after her mother left for work. A.M.'s mother testified that Stark lived with her and her daughter at the Jackson Street address from the time they moved in, which was either in June or July of 1986, until he moved out sometime that September.

Despite the discrepancy between the dates alleged in the complaint and the testimony received at the preliminary examination, the state filed an information continuing to assert that the offense occurred between October of 1986 and January 10, 1987. Stark moved to dismiss the information. One of the grounds was that the dates alleged in the information did not correspond to the dates described at the preliminary examination. At a March 30, 1988 hearing on the motion, the state orally moved to amend the information charging the offense to have occurred between June, 1986 and September 14, 1986; it was granted.

Another argument for dismissing the information was that the time frame was overly broad. Stark complained that he had a right to compile witnesses for an alibi. He argued that the information did not satisfy the "constitutional standard of notice." The state responded

that when dealing with a child of tender years, there is often great difficulty in establishing a definite time frame. The court took briefs on the issue and, following the briefs, denied the motion.

The trial began on March 10, 1989. Before the jury was selected, Stark renewed his motion to dismiss based upon the generality of the time period. Again, Stark complained that he could not adequately prepare an alibi defense based upon the information filed by the state. The motion was denied.

Shortly thereafter, the prosecutor's opening statement narrowed the time frame. He informed the jury that the offense occurred while Stark resided with A.M. and her mother on Jackson Street; that this period was between July 3 and September 14 when Stark left the premises. Further, the jury was told that the offense happened while the mother was at work and when A.M. was ready for bed. The prosecutor then informed the jury that the evidence would show the mother to have been working third shift during two periods in 1986: July 21 to July 25 and September 6 until September 26. The only reasonable reading of the opening statement is that the incident took place within a period of thirteen days—when the mother worked third shift while Stark lived with them on Jackson Street.

The evidence bore out the prosecutor's statement. A.M. said that the incident took place while the mother was at work. A records custodian for the mother's employer testified that the mother worked the evening shift during the two periods the prosecutor identified in his opening statement. The mother testified that Stark left the premises on September 14.

At closing argument, the prosecutor underscored the significance of the time period in which the assault occurred. He reminded the jury that the assault hap-

543

pened when A.M. said she was four years old; she lived in the place where she said it happened; Stark lived with her there; and the assault happened when the mother was working.

It is evident that the reason for the prosecutor's earmarking of these facts was to show "opportunity." Also, these independent facts corroborated A.M.'s testimony and improved her credibility. The prosecutor pointed to testimony of a police officer that Stark had given a statement to him denying the offense could have occurred since the mother was unemployed throughout the whole time the three of them lived together on Jackson Street. In the words of the prosecutor, the offense occurred when Stark "knows her mother is at work."

Our concern is this: On the morning of trial, the prosecutor stood mute while Stark unsuccessfully argued that the information charging a time period of four months was too broad. Yet, minutes later, the prosecutor told the jury that the offense occurred within a time span which we compute to be thirteen days. The task is to determine the law in this regard.

One of the essential functions of the information is to provide the defendant with sufficient details regarding the nature of the charge and the conduct which underlies the accusation to allow her or him to prepare or conduct a defense. *See People v. Morris,* 461 N.E.2d 1256, 1258 (N.Y. 1984). It is a constitutional notice requirement. *See id.*

When informing the accused, the time frame in which the crime allegedly occurred is one of the underlying facts that should be provided. *State v. Fawcett,* 145 Wis. 2d 244, 253, 426 N.W.2d 91, 95 (Ct. App. 1988). Where, however, the date of the commission of the crime

is not a material element of the crime charged, it need not be precisely alleged. *Id.* at 250, 426 N.W.2d at 94. Time is not of the essence in sexual assault cases. *Id.* This is especially so in cases involving children of tender years. Due to the vagaries of a child's memory, a more flexible application of notice requirements is both required and permitted. *Id.* at 254, 426 N.W.2d at 96.

Nonetheless, there does remain a duty upon the state to inform a defendant, within *reasonable* limits, of the time when the offense charged was alleged to have been committed. *State v. Stepney,* 464 A.2d 758, 764 (Conn. 1983), *cert. denied,* 465 U.S. 1084 (1984). We stated in *Fawcett* that reasonableness is considered when determining whether the test for sufficiency of a charge, set out in *Holesome v. State,* 40 Wis. 2d 95, 102, 161 N.W.2d 283, 287 (1968), is satisfied. *Fawcett,* 145 Wis. 2d at 251–53, 426 N.W.2d at 94–95.

In assessing reasonableness, we are mindful that child victims of sexual assault are often unable to pinpoint dates. Therefore, we do not hold the state to an impossible burden, especially when the state has no control over the ability to narrow. The state does not have a duty to disclose information it does not have. *Stepney,* 464 A.2d at 764. We agree with the Michigan Court of Appeals that:

> Where the facts demonstrate that the prosecutor has stated the date and time of the offense to the best of his or her knowledge after undertaking a reasonably thorough investigation, we would be disinclined to hold that an information or bill of particulars was deficient for failure to pinpoint a specific date.

545

*People v. Naugle*, 393 N.W.2d 592, 595-96 (Mich. Ct. App. 1986).

However, the above principles suggest a corollary: the state has a duty to disclose information it does have. New York's highest court touched upon this theme in *Morris* and we thought enough of it to cite it in *Fawcett. Fawcett*, 145 Wis. 2d at 251 n.2, 426 N.W.2d at 94. The *Morris* court wrote that if the defendant contends that the state knew of a specific date in time, but purposely did not allege the information, and the defendant's accusation is borne out, and there is no good cause for withholding that information, the charge should be dismissed. *Morris*, 461 N.E.2d at 1260.

Here, we do not know whether the state purposely withheld information limiting the charge to thirteen days. And Stark does not claim that it was purposeful. However, this much we do know. A major issue in the trial, as seen by the state, was the opportunity of Stark to commit the offense. Much of its testimony and a good part of its argument were focused on showing that the mother worked nights for thirteen days during the time that Stark lived with the mother and A.M. on Jackson Street. The state argued, therefore, that Stark had the opportunity during those thirteen days and that is when the offense occurred. If that was to be the state's allegation, and it ultimately was, it was information narrowing the time frame in which the state was alleging that the offense occurred. Stark was entitled to notice that the charge was now being narrowed in terms of the time frame.

At oral argument on this specific issue, the state—to its credit—acknowledged that the prosecutor "may have lacked great diligence" in failing to inform the defendant

about the thirteen days. Still, the state argued that reversal was not required for a variety of reasons. We will only address one—prejudice.

The state asserts that the only possible prejudice would have been the inability to launch an effective alibi defense. The state contends that for Stark to now claim that he was unable to investigate an alibi defense because of the state's error would be a specious assertion. The state observes that alibi defenses are generally asserted when the defendant claims to have been somewhere else at the time of the offense. Since Stark lived at the premises, the state reasons that he could not have been someplace else.

We cannot agree. The defendant did not take the stand. However, he went before the trial court at least twice, once on the morning of trial, to tell the court that he could not prepare an alibi defense because the time period was too broad. It would be speculative at best for us to conclude that, just because Stark lived at the premises, he must have stayed in the house each evening the mother was working. We do not know whether Stark would have been able to offer an alibi defense for a charge covering thirteen days where he could not do so for a charge amounting to three and a half months, but the law gives him that chance.

Moreover, a showing of "prejudice" by the defendant is not the proper analysis when constitutional impropriety has been shown. Rather, the question is whether such error was harmless beyond a reasonable doubt. We will therefore undertake this analysis.

The defendant is entitled to reversal only if the error affected his substantial rights; if the state's error was harmless error, there are no grounds for reversal.

547

Section 805.18, Stats. The state's error in Stark's case was a constitutional error because it deprived Stark of the right to notice. Constitutional error is considered harmless if the court can declare the belief that it was harmless beyond a reasonable doubt because there is no reasonable possibility that the error contributed to the conviction. *State v. Brecht*, 143 Wis. 2d 297, 317, 421 N.W.2d 96, 104 (1988).

In considering whether it was harmless error for the state to deprive Stark of the chance to present an alibi defense, we recognize that alibi evidence does not raise reasonable doubt as a matter of law. *State v. Grahn*, 21 Wis. 2d 49, 52, 123 N.W.2d 510, 512 (1963). An alibi which is corroborated and unimpeached and not inherently incredible is merely additional evidence which can be weighed and disregarded if not believed by the jury. *State v. Harris*, 40 Wis. 2d 200, 208–09, 161 N.W.2d 385, 390 (1968).

If a defendant intends to rely upon an alibi, he must give notice to that effect and has the burden of producing evidence on such a theory of defense. Once the state narrowed the time frame for the offense, Stark never took any steps suggesting that he now wished to investigate a possible alibi defense. At trial, he did not seek a mistrial or a continuance; post-trial, he did not present, even by affidavit, any evidence suggesting an alibi defense. To this date, Stark has yet to produce any evidentiary hypothesis for an alibi. At most, Stark shows us a prosecutorial violation, but no attendant consequence. Since Stark offers no evidence of an alibi, the state's error in depriving Stark of the chance to present an alibi defense was harmless error because there is no record showing a reasonable possibility that the error contrib-

uted to Stark's conviction. Therefore, the state's error does not necessitate reversal.

Stark also raises a sufficiency of the evidence issue. The way Stark would like us to view the facts, this is what occurred. While Stark lived with A.M. and her mother at the Jackson Street address, the three used to sleep together with A.M. sleeping in the middle. One night, A.M. was in bed lying face down. Stark came into the room in his underwear. He took off his underwear and went to bed, like he always did. Then he rolled A.M. over on her back and kissed her good night. He always kissed her good night. On this occasion, the upper part of his body touched the upper part of A.M.'s body. At no time did any part of Stark's body touch A.M.'s genitals.

From this, Stark concludes the evidence to be "wholly lacking" that he intentionally touched A.M.'s breast area with the intent of sexual arousal. He paints the evidence as one of a person giving a good night kiss, perhaps as an afterthought once he was already in bed. He points to A.M.'s testimony that Stark always kissed A.M. good night and a statement he made to an investigating officer that he always slept naked as the telling evidence that nothing was amiss.

■■■

We search for that evidence and those inferences most favorable to the jury verdict. *See State v. Alles,* 106 Wis. 2d 368, 376–77, 316 N.W.2d 378, 382 (1982). The evidence and inferences the jury could have drawn are as follows. As to whether it was a customary practice for Stark to sleep naked or kiss the girl while he was naked, the evidence conflicts. A.M. testified that Stark normally wore underwear when he kissed her good night and he never before kissed her good night when he was naked. The mother testified that Stark usually wore his underwear or shorts to bed and that when he kissed

A.M. good night, he was usually fully dressed. She further testified that Stark never kissed the girl while he was naked. Additionally, A.M. answered "no" when the prosecutor asked her whether Stark "lay on top of [her] like that" when he kissed her good night on other nights.

The jury could have inferred that while Stark always kissed A.M. good night, he did so with at least his underwear on. This time he was naked. The jury could also have inferred that Stark lied when he told the investigator one thing (he always slept naked and kissing A.M. good night while in the altogether was not unusual) while A.M. and the mother had a different version (he never kissed her while he was naked and never in the manner that he did that evening). Because the jury could have believed that on this night Stark turned her on her back and put the top half of his body on the top half of her body while he was naked, a new occurrence, the jury could have inferred that he was touching her chest area for the purpose of sexual arousal. This is not impermissible speculation and conjecture. It is a proper determination for the jury to make and we will not disturb it.

*By the Court.*—Judgment affirmed.