STATE of Wisconsin, Plaintiff-Respondent,

v.

Carlos R. DELGADO, Defendant-Appellant.†

Court of Appeals

*No. 96–2194–CR. Submitted on briefs September 4, 1997.—Decided October 28, 1997.*

(Also reported in 572 N.W.2d 479.)

†Petition to review granted.

16

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Joseph E. Schubert* of *Brennan & Collins* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney

general, and *Sally L. Wellman*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

FINE, J. Carlos R. Delgado was found guilty by a jury of six counts of first-degree sexual assault of a child. *See* § 948.02(1), STATS. He appeals from the trial court's order denying him a new trial. He claims that he was denied a fair trial because one of the jurors did not disclose during the *voir dire* that she had been sexually assaulted. We affirm.

This is the second time this case has come to us on the issue of whether Delgado received the fair trial to which he is entitled. In March of 1995, we recounted the facts and analyzed the applicable standard:

> During voir dire, prospective jurors were given a questionnaire, which the trial court described as follows:
>
>> The sixth question pertains to whether you have ever been a victim or witness to a crime. The seventh question pertains to whether you have ever had a criminal justice contact.
>>
>> Now, what I mean by that is.[sic] Perhaps you were a victim of a crime or you were a witness to a crime and you were requested to come down and talk to someone in the district attorney's office. Perhaps charges were issued against someone and you came to court. You received a subpoena. You testified in court or maybe you only sat in the gallery and watched how the trial proceeded.
>
> Panelist Vickie C[.] answered: "I have not been a victim or witness of a crime. I have no criminal

justice contacts." The assistant district attorney later asked the panel: "Are there any members of the jury panel who either have a close friend or a close relative or you yourself who have been the victim of a sexual assault, either as a child or as an adult?" C[.] made no response. C[.] was seated as a juror.

After trial, juror Elizabeth R[.] sent a letter to the trial court stating in part: "Prior to the trial, all prospective jurors were asked directly whether they had been a victim of sexual abuse. During deliberations, a juror revealed that she had been a victim of sexual assault or abuse but did not provide this information under questioning prior to the trial." R[.] later identified that juror as C[.].

At the hearing on Delgado's post-conviction motion, C[.] testified: "I was relating it to a crime being reported. I did not consider it a crime. I was not a victim of a crime. It was never reported." The trial court found: "based on the drafting of the question, the way the question was phrased, I do not find based on her testimony here today that she incompletely or incorrectly answered that question." The trial court denied Delgado's motion for relief.

"[T]he trial court's determination on a motion for a new trial or relief from judgment because a juror failed to fully disclose information during voir dire is reversible only for either an [erroneous exercise] of discretion or for a clear error of law in the exercise of its discretion." *State v. Wyss*, 124 Wis. 2d 681, 717–718, 370 N.W.2d 745, 762 (1985), *overruled on other grounds*, *State v. Poellinger*, 153 Wis. 2d 493, 451 N.W.2d 752 (1990).

*Wyss* set forth a two-part test in juror bias cases:

> [I]n order to be awarded a new trial, a litigant must demonstrate: (1) that the juror incorrectly or incompletely

responded to a material question on *voir dire*; and if so, (2) that it is more probable than not that under the facts and circumstances surrounding the particular case, the juror was biased against the moving party.

*Id.*, 124 Wis. 2d at 726, 370 N.W.2d at 766.

First, the record is clear that C[.] responded incorrectly to the material questions of whether she had ever been "a victim of a crime" or "a victim of a sexual assault." She denied, during *voir dire*, having been a victim of a crime or sexual assault, but subsequently told fellow jurors that she had been sexually assaulted. C[.]'s subjective belief that it was not a crime because it had not been reported does not make her answer complete or accurate, nor does the trial court's assessment that her answer was credible. The supreme court in *Wyss* stated:

An honest answer may nevertheless be objectively incorrect. A technically correct answer may nevertheless be incomplete. We conclude that an honest answer, if it is objectively incorrect or incomplete, should not preclude the moving party from making further inquiry with respect to juror bias.

*Id.*, 124 Wis. 2d at 726–727, 370 N.W.2d at 766–767. We conclude that the trial court erroneously exercised its discretion in concluding that C[.] did not answer the questions incompletely or inaccurately.

We thus reach the second prong of *Wyss* dealing with bias. The trial court, however, did not reach that issue in the hearing on Delgado's post-conviction motion, and did not make a full factual record on the issue. The court of appeals is without jurisdiction to make factual determinations. *Barrera v. State*, 99 Wis. 2d 269, 282, 298 N.W.2d 820, 826

(1980), *cert. denied*, 451 U.S. 972. Therefore, we remand this issue to the trial court for a hearing on the second prong of *Wyss*, the issue of bias.

*State v. Delgado*, No. 94–1411-CR, unpublished slip op. at 2–5 (Wis. Ct. App. March 28, 1995).

The trial court held the hearing, but did not permit Delgado to be present. Delgado claims that this was error. Under *State v. Vennemann*, 180 Wis. 2d 81, 508 N.W.2d 404 (1993), it was not. Additionally, although the trial court posed questions to the juror that were pertinent to the inquiry, and permitted Delgado to suggest other questions, *see After Hour Welding, Inc. v. Laneil Management Co.*, 108 Wis. 2d 734, 743, 324 N.W.2d 686, 692 (1982) ("The judge should conduct the examination of jurors called, but the attorneys may submit questions to the judge they wish asked."), the trial court did not ask all of the questions submitted to it by Delgado. Delgado claims that this was error. We agree in part, but conclude that the trial court's failure to ask some of the questions suggested by Delgado was harmless beyond a reasonable doubt. The trial court also declined Delgado's request that other jurors be examined at the hearing. Delgado claims that this was error. We disagree.

1. *Delgado's presence at the hearing.*

■

Section 971.04(1), STATS., controls whether Delgado had a right to attend the postconviction evidentiary hearing. This section provides:

**(1)** Except as provided in subs. (2) and (3), the defendant shall be present:
 (a) At the arraignment;
 (b) At trial;

(c) At all proceedings when the jury is being selected;

(d) At any evidentiary hearing;

(e) At any view by the jury;

(f) When the jury returns its verdict;

(g) At the pronouncement of judgment and the imposition of sentence;

(h) At any other proceeding when ordered by the court.

Section 971.04(1) "applies only to the pretrial, trial, sentencing and judgment phases of criminal procedure," and not to "postconviction evidentiary hearings brought pursuant to sec. 974.02 and sec. (Rule) 809.30(2)(h), Stats." *Vennemann*, 180 Wis. 2d at 86, 508 N.W.2d at 406.[1] The only exception to this rule is when the hearing concerns " 'substantial issues of fact as to events in which' " the defendant participated. *Id.*, 180 Wis. 2d at 87, 508 N.W.2d at 407 (citation omitted). *See also United States v. Hayman*, 342 U.S. 205, 220 (1952) (defendant must be produced at postconviction hearing when evidentiary matters within the defendant's "own knowledge" are at issue) (relied upon by *Vennemann*, 180 Wis. 2d at 87, 508 N.W.2d at 407). At other times, whether to permit the defendant to be present at the postconviction hearing is within the trial court's discretion. *Vennemann*, 180 Wis. 2d at 88, 508 N.W.2d at 407.

■

The trial court rejected Delgado's request to be present at the postconviction hearing because it believed that Delgado's presence would cause discomfort to the juror whose history as a sexual-assault

---

[1] There is no dispute but that Delgado's motion for postconviction relief was filed under § 974.02, STATS., and RULE 809.30, STATS.

victim was being explored. Delgado has not alleged that he has any personal knowledge of either that history or whether the juror was biased against him. Although Delgado would have undoubtedly preferred to be present at the hearing rather than at the prison where he was then incarcerated, his presence was not required by either § 971.04(1), STATS., or any constitutional principle to which we have been pointed or of which we are aware. The trial court's discretionary decision was reasonable and is affirmed.

Where we and the dissent disagree is whether a trial court's desire to protect a juror from discomfort—to make her postconviction testimony, in the trial court's words, "as easy for her as possible"—is an appropriate factor in deciding whether to permit a defendant who has no personal knowledge relevant to the issues to be decided at a postconviction hearing to be present at that hearing. Given *After Hour Welding*'s concern that a juror not be subjected to questioning by counsel at a postconviction hearing, *id.*, 108 Wis. 2d at 743, 324 N.W.2d at 692, we believe that it is. We also believe that the dissent's reliance on *Coy v. Iowa*, 487 U.S. 1012 (1988), is misplaced. Unlike *Coy*, this is not a "confrontation" case and the juror was not "a witness against" Delgado within the meaning of the Sixth Amendment. *See Barber v. Page*, 390 U.S. 719, 725 (1968) (right to confrontation "is basically a trial right"); *Williams v. New York*, 337 U.S. 241, 250–251 (1949) (right of confrontation does not apply at sentencing); *United States v. Andrus*, 775 F.2d 825, 836 (7th Cir. 1985); *cf. Venneman*, 180 Wis. 2d at 86–87, 508 N.W.2d at 406–407 (prisoner need not be produced at postconviction evidentiary hearing unless he or she has personal knowledge relevant to issues to be decided at that hearing).

## 2. Questions to the juror.

As noted, a defendant who claims that a juror was biased or prejudiced against the defendant is entitled to a hearing where that alleged bias or prejudice can be explored. Neither the defendant nor his or her lawyer is permitted to question the juror directly. *After Hour Welding*, 108 Wis. 2d at 743, 324 N.W.2d at 692. Rather, the trial court conducts the inquiry, and the defendant may suggest appropriate questions. *Ibid.* A verdict may not be overturned because of a juror's bias unless the defendant can show that the bias was "manifest"—a mere "suggestion of partiality" does not suffice. *State v. Messelt*, 185 Wis. 2d 254, 269, 518 N.W.2d 232, 238 (1994) (citation and internal quotation marks omitted). Although Delgado insists that he should have been able to question the juror, he also claims that the trial court erred in not asking some of the questions Delgado suggested.

In light of the supreme court's direction in *After Hour Welding*, Delgado's claim that the trial court erred in not permitting him to question the juror directly is without merit. Delgado is partially correct, however, when he asserts that the trial court erroneously limited the scope of its inquiry.

When a defendant claims that a juror's incorrect responses to *voir dire* questions reveal that the juror was biased against the defendant, RULE 906.06(2), STATS., does not prevent inquiry into what was said during jury deliberations "for purposes of determining whether a juror failed to reveal potentially prejudicial information" during the *voir dire*. *Messelt*, 185 Wis. 2d

at 267, 518 N.W.2d at 237.[2] Inquiry into the jury's deliberations, however, is otherwise forbidden, "except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror," RULE 906.06(2); *see After Hour Welding*, 108 Wis. 2d at 743, 324 N.W.2d at 691 (trial court to determine whether statements that reveal juror's prejudice were made, but trial court "should not inquire what their effect was" on the other jurors or on the deliberations). A juror's life experiences, even if they reflect predilections and inclinations that may stem from feelings of bias or prejudice, do not constitute either "extraneous prejudicial information" or "outside influence" as those terms are used in RULE 906.06(2), and may be shared with the jury unless "juror prejudice is so strong and pervasive that fundamental fairness requires that the rule of testimonial incompetency give way," *State v. Marhal*, 172 Wis. 2d 491, 495–497, 493 N.W.2d 758,

---

[2] We agree with Delgado that *Messelt* overruled, *sub silentio*, our contrary holding in *Johnson v. Agoncillo*, 183 Wis. 2d 143, 160–161, 515 N.W.2d 508, 515 (Ct. App. 1994). RULE 906.06 (2), STATS., provides:

> INQUIRY INTO VALIDITY OF VERDICT OR INDICTMENT. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon the juror's or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may the juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received.

761 (Ct. App. 1992); *see also Messelt*, 185 Wis. 2d at 264, 518 N.W.2d at 236; *State v. Casey*, 166 Wis. 2d 341, 347, 479 N.W.2d 251, 253 (Ct. App. 1991) (juror's "own experience as a victim of a sexual assault and her opinion regarding the reason a victim of sexual assault may not come forward" not "extraneous" prejudicial information within meaning of RULE 906.06(2)).[3]

The law permits inquiry into what was said during deliberations in order to determine whether a juror gave false or incomplete responses on *voir dire* because that concerns the person's qualifications to be a juror—information that both the trial court and the parties needed to exercise their respective roles in the jury-selection process. *Messelt*, 185 Wis. 2d at 267–268, 518 N.W.2d at 237–238. On the other hand, inquiry as to how what was said during deliberations may have affected the verdict is forbidden because that would intrude upon the core values protected by RULE 906.06(2). *See After Hour Welding*, 108 Wis. 2d at 743, 324 N.W.2d at 691. We examine against this background the questions that Delgado sought unsuccessfully to have the trial court ask juror Vickie C., and whether questions not asked would have had any tendency to prove that the juror had a " 'manifest' " bias against Delgado. *See Messelt*, 185 Wis. 2d at 269, 518 N.W.2d at 238 (citation and internal quotation marks omitted).

Delgado's brief on appeal reproduces the questions that he contends the trial court erroneously did not ask the juror. Many of those questions *were* asked, however, either literally or in substance, or were covered by

---

[3] Thus, Delgado's claim that juror C.'s comments to the jury about her own assault was "extraneous prejudicial information," *see* RULE 906.06(2), STATS., is without merit.

the juror's responses to the trial court's questions.[4] Moreover, many of the questions that Delgado argues

[4] The questions that were asked, either literally or in substance, or were covered by the juror's responses to questions that the trial court did ask are:

Were you ever the victim of sexual assault/abuse?

When did it occur?

What relationship, if any, did the perpetrator have to you?

Why didn't you report this to an authority figure? Why wasn't the perpetrator charged?

Do you harbor ill will toward or feel uncomfortable when dealing with an individual charged with committing a sexual assault? At the time of trial, did you?

Do you feel that you harbored feelings of ill will toward or felt uncomfortable with the defendant in this case?

During the trial of this matter, were you thinking about your experiences?

During your participation in the trial, did you feel that you didn't want the defendant to get away with anything as the perpetrator in your case did?

During the trial, did you still harbor an animosity toward the perpetrator of the acts against you? Did any of this transfer to the defendant in this case?

Why did you bring up this information during deliberations (when you didn't bring it up during voir dire)?

What provoked you into bringing up these experiences?

Why did you bring up these experiences?

How did you feel it was relevant and what effect did you want it to have? Did you bring it up to support the guilty verdict?

How did you take into account your victimization during your participation in the trial? What sort of effect did your victimization have on your participation in the trial?

Did your prior experiences cause you some problems during deliberations and/or the trial?

(Paragraph numbers and subparagraph letters omitted.) Additionally, the trial court asked the following questions and received the following responses:

should have been asked were improper because they intruded impermissibly into the jurors' deliberations.[5] There were four questions that the trial court did not ask and that were not covered by the juror's responses to the questions that were asked:

What occurred?

What effect did it have on you?

What sort of treatment/counseling, if any, did you receive after your victimization?

Is there anything in your background, your experiences in life, anything about this prior event that we just talked about, anything about your view of the criminal justice system, anything about your view of police officers, anything at all that makes you feel that you'd go ahead and vote to find this defendant guilty anyway even though the State hadn't proved the case beyond a reasonable doubt—

A Absolutely not.

`. . . .

So with that in mind, and putting yourself back in time to the period of voir dire, is there anything at all about that prior event, your experiences, your view of it, your recollection of it as it existed at the time of the voir dire, that makes you feel or makes you—I'm sorry—that makes you feel at that time that you could not be a fair and impartial juror?

A No.

[5] The proposed questions that intruded impermissibly into the jurors' deliberations are:

What did you say during deliberations concerning your victimization?

How did the jury respond to your statements?

How did you respond during deliberations when confronted by Juror R[.] about your failure to bring up this information during voir dire? Did you cry? Did you say that you were ashamed and/or embarrassed? Did this make other jurors uncomfortable?

(Paragraph numbers omitted.)

> Since your victimization, have you been involved
> with any support groups and/or organizations deal-
> ing with aid to victims? Have you had any contact
> with other victims since your victimization?

(Paragraph numbers and subparagraph letters omit-
ted.) Although these questions should have been asked,
their omission in light of this record was *de
minimis*—they were only marginally relevant to proof
of "manifest bias," which, as noted earlier, is what the
defendant must show in order to receive a new trial.

The juror was forty-nine at the time of the hearing,
and testified that she was sexually assaulted when she
was "six or seven years old" by a person she knew but
who was not related to her by either blood or marriage.
She told the trial court that until Delgado's trial, she
had never discussed the assault "in general or specific
terms" with anyone. Thus, it is a fair inference from
this record that if asked, the juror would have
responded that she had never received counseling or
treatment in connection with the assault, and did not
get involved with any victims or victim-support groups
as a result of the assault.[6] Moreover, the "What

---

[6] Although the trial court did not articulate this as a reason
for not asking the questions about treatment and victim-sup-
port groups or activities, its decision not to ask the questions is
consistent with the juror's response that she had never dis-
cussed her victimization with anyone prior to Delgado's trial.
*See Schneller v. St. Mary's Hospital Medical Center*, 162 Wis. 2d
296, 311, 470 N.W.2d 873, 879 (1991) (trial court's findings may
be implicit in its decision); *Sohns v. Jensen*, 11 Wis. 2d 449, 453,
105 N.W.2d 818, 820 (1960) (Appellate court assumes "when a
finding is not made on an issue which appears from the record to
exist, that it was determined in favor of or in support of the
judgment."); *Marshall v. Lonberger*, 459 U.S. 422, 433 (1983)

occurred?" and "What effect did it have on you?" questions were only marginally relevant, given that the juror was assaulted when she was six or seven and that she had never discussed it with anyone for more than forty years. Thus, although the trial court should have asked these questions as Delgado requested, its failure to do so was harmless beyond a reasonable doubt. *See State v. Dyess*, 124 Wis. 2d 525, 540–543, 370 N.W.2d 222, 230–231 (1985); *State v. Stark*, 162 Wis. 2d 537, 547, 470 N.W.2d 317, 321 (Ct. App. 1991) (A "defendant is entitled to reversal only if the error affected his substantial rights.").

### 3. *Testimony of other jurors.*

Delgado claims that the trial court erred in preventing him from calling as a witness either the juror who wrote the letter, Elizabeth R., or the other jurors. We disagree.

■

As noted, breaching the wall of jury-deliberations secrecy is only permitted to determine either "whether a juror failed to reveal potentially prejudicial information during *voir dire*," *Messelt*, 185 Wis. 2d at 267, 518 N.W.2d at 237, or "whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror," RULE 906.06(2), STATS. Neither the testimony of juror R. nor of the other jurors would have added anything to the

(Although trial court failed to make express findings on credibility, failure to grant relief reflects implicit adverse finding.); *see also State v. Friday*, 147 Wis. 2d 359, 370–371, 434 N.W.2d 85, 89 (1989) (appellate court must accept reasonable inferences that the trial court draws from the evidence).

record as to whether juror C. responded accurately on *voir dire*. Indeed, our prior decision in this case recognized that she did not. *Delgado*, unpublished slip op. at 5. Delgado wanted to impeach the jury's verdict by analyzing their deliberations. This is prohibited by RULE 906.06(2) ("[A] juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon the juror's or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.").

### 4. *Juror C.'s bias.*

As we have seen, a verdict may not be overturned unless defendant can show that a juror was biased and that that bias was "manifest." *Messelt*, 185 Wis. 2d at 269, 518 N.W.2d at 238 (citation and internal quotation marks omitted). A determination on juror bias is vested in the trial court's discretion, *ibid.*, and will not be overturned unless "clearly erroneous," *State v. Wyss*, 124 Wis. 2d 681, 732, 370 N.W.2d 745, 769 (1985), *overruled on other grounds, State v. Poellinger*, 153 Wis. 2d 493, 451 N.W.2d 752 (1990). In its oral decision, the trial court opined with "unequivocal and resounding" certainty that the juror was not biased against Delgado. Supported by the juror's testimony that she was not biased against Delgado, which the trial court found to be credible, this finding is not "clearly erroneous." Additionally, the trial court applied the appropriate legal standards in reaching its decision. Thus, its decision was well within its reasoned exercise of discretion. *See Lievrouw v. Roth*, 157 Wis. 2d 332, 358–359, 459 N.W.2d 850, 859–860 (Ct.

App. 1990) (trial court's discretionary determination will be upheld on appeal if it is "consistent with the facts of record and established legal principles."). As in *Wyss*: "There is no showing in this record that [juror C.] was actually biased against the defendant. Nor are there any facts and circumstances demonstrated from which bias may be inferred. There is simply no evidence in this record which demonstrates that juror [C.]'s incorrect or incomplete answers were the result of bias. Nor is there any indication that juror [C.] intentionally tried to conceal information or purposefully gave an incorrect answer." *Wyss*, 124 Wis. 2d at 732, 370 N.W.2d at 769.

*By the Court.*—Order affirmed.

SCHUDSON, J. *(dissenting).* Following our previous reversal of this case, the trial court, scheduling the evidentiary hearing and considering whether Delgado would be allowed to attend, commented:

> I'll put this over for two weeks, allow you [defense counsel] a chance to talk to your client . . . and tell us . . . what your position is with respect to additional testimony, and also I think you need to address whether Mr. Delgado has to be here for that hearing, *and I'll tell you that I am trying to do this in a way, if we have to take more testimony from this juror, that makes it as easy for her as possible,* and frankly, I don't think she needs to be in a courtroom with the defendant. I don't think it's necessary. I think that adds to the trauma to her, and if it's not legally required, I'm not inclined to do it.
>
> [T]his woman . . . has paid an exceedingly high price for performing her civic duty at this point, *and I want to minimize that as much as possible.* So unless it's legally required for Mr. Delgado to be at

that hearing when we take testimony from that juror, if that's what we have to do, I'm not inclined to have him here.

(Emphasis added.) At the evidentiary hearing that followed more than four months later, the trial court decided to take testimony from the juror in the jury room because that setting "would be a little easier. . . . I think that would be less intimidating for [the juror]." The trial court began the hearing by addressing her:

> [F]irst of all, I want to assure you as best I can that you are not in any trouble in connection with this case. This is not about building any kind of a record or doing anything so that anybody can take any action against you. Okay.
>
> What has occurred in this case is that based on a concern about what occurred during voir dire in reference to information that was given or not given, for reasons that we may get into a little bit this morning, the Court of Appeals felt that there was some question about whether or not Mr. Delgado got—was tried by a fair and impartial and unbiased jury. So the only—the only focus of this hearing and this whole procedure is to determine whether or not Mr. Delgado should get a new trial.
>
> It's not about whether or not anything should happen to you or that you're in any trouble. So as best I can assure you, I want to tell you that you're not in any trouble. There is nothing that's going to occur as a result of this hearing that's going to be focused on you. It's only going to be focused on whether or not we need to provide a different trial for Mr. Delgado.

Although the trial court had indicated that it would "give counsel an opportunity to ask questions after [it had] completed [its] questions," and that it

"may allow the attorneys some limited opportunity to ask questions," it did not do so. Instead, the trial court examined the juror briefly (the transcript, including the trial court's questions and its reading back of testimony from the previous evidentiary hearing, totals fifteen pages), declined to ask many of defense counsel's submitted questions, denied defense counsel's request to ask "follow-up questions" on a number of subjects covered in the juror's testimony, and declined to ask those questions on counsel's behalf.

After concluding its questioning of the juror, the trial court thanked her and then stated:

> I'm sorry for—I do want to say that, having now conducted this hearing, I apologize on behalf of the system that you had to go through this twice. I think we ask an awful lot of citizens, although I think it's an obligation and a responsibility on their part, it[ ] still requires commitment to come down here and participate in a jury trial, and it is a sacrifice, and we understand that, and we appreciate that. But then to have to come back and to go through this kind of process twice I think is—it's asking more than we should of citizen jurors, I think, but I appreciate very much your willingness to come in here and your willingness to answer the questions, and I hope that you can now put all this behind you.

Although in isolation, or in a different legal context, the trial court's efforts to place the juror at ease could very well be commendable, in this case they resulted in an abbreviated hearing that failed to provide a full and fair examination of the juror's possible bias. Indeed, given the trial court's stated intention to make the hearing "as easy for her as possible," and its apology for requiring her to return for the hearing, it is

35

difficult to deflect the impression that the trial court's apparent point of view influenced several of its discretionary decisions.

### (1) Delgado's presence at the hearing

As the majority explains, a defendant does not have the right to be present at a postconviction evidentiary hearing unless it involves a substantial factual issue related to events in which the defendant participated. This does not mean, however, that a defendant's presence is prohibited, or that a defendant's presence would not aid in the development of a full and fair hearing. Even when the subject of a hearing does not involve an event in which the defendant participated, a trial court still has discretion to allow the defendant's presence. Indeed, "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the proceeding." *Kentucky v. Stincer,* 482 U.S. 730, 745 (1987) (evaluating whether a defendant has the right to be present at the competency hearing to determine whether a child will be allowed to testify in a sexual abuse case).

In this case, from its first comments to its final apology, the trial court focused on the comfort of the juror. It never considered whether Delgado's "presence would contribute to the fairness of the proceeding." Had the trial court focused more clearly on the juror's possible bias, it might well have perceived the importance of Delgado's presence. After all, the juror's credibility was at issue and, indeed, because of her failure to respond accurately during voir dire and her failure to provide a plausible explanation for that failure (not to mention her disclosure of the concealed information to convince a holdout juror), her credibility

was at least doubly suspect. Thus, even though the subject of the juror's testimony did not involve events in which Delgado had been directly involved, his presence could have motivated important testimony.[1]

Thus, although the majority is correct in concluding that Delgado did not have the statutory right to be at the hearing, the majority is incorrect in failing to fully apply the very legal principle it additionally cites: "whether to permit the defendant to be present at the postconviction hearing is within the trial court's discretion." Majority op. at 23. The majority addresses only whether Delgado had "any personal knowledge of either [the juror's] history [as a sexual-assault victim] or whether the juror was biased against him." Majority op. at 24. Of course, he did not. But the majority fails to consider, just as the trial court failed to consider, whether Delgado's presence would "contribute to the fairness of the proceeding" and, if so, whether that contribution would be outweighed by any unfairness his presence might produce.

---

[1] As the Supreme Court has emphasized:

> The perception that confrontation is essential to fairness has persisted over the centuries because there is much truth to it. A witness "may feel quite differently when he has to repeat his story looking at the man whom he will harm greatly by distorting or mistaking the facts. He can now understand what sort of human being that man is." It is always more difficult to tell a lie about a person "to his face" than "behind his back." In the former context, even if the lie is told, it will often be told less convincingly.

*Coy v. Iowa*, 487 U.S. 1012, 1019 (1988) (citation omitted). Although in *Coy* the Supreme Court was considering the Sixth Amendment right of confrontation, its commonsense assessment of how a person-to-person meeting may motivate truthfulness also is instructive in considering whether such person-to-person "presence would contribute to the fairness of the proceeding."

Despite the fact that this was a hearing to examine the juror's possible bias, and despite the fact that the juror's credibility was at issue, the trial court focused on the comfort of the juror to the exclusion of the consideration of whether Delgado's "presence would contribute to the fairness of the proceeding." Thus, the trial court failed to exercise lawful discretion.

### (2) Counsel's questioning of the juror

Citing *After Hour Welding, Inc. v. Laneil Management Co.*, 108 Wis. 2d 734, 743, 324 N.W.2d 686, 691 (1982), the majority states, "Neither the defendant nor his or her lawyer is permitted to question the juror directly." Majority op. at 25. That, however, is not quite what *After Hour Welding* says. The supreme court wrote:

> [T]he trial court should examine the juror under oath only as to the circumstances under which the statements were made and not as to what effect they had, if made, on himself as a juror or on the other jurors. The judge must then determine whether he is convinced by clear and satisfactory evidence the statements were made and determine as a matter of law the probable effect of them upon a hypothetical average jury.
>
> . . . .
>
> The judge should conduct the examination of jurors called, but the attorneys may submit questions to the judge they wish asked.

*After Hour Welding*, 108 Wis. 2d at 742–43, 324 N.W.2d at 691–92. In *After Hour Welding*, the supreme court was discussing the procedure a trial court should employ at a hearing to determine whether, under RULE 906.06(2), STATS., "extraneous prejudicial information

was improperly brought to the jury's attention," *id.* at 738, 324 N.W.2d at 689, not whether a juror was biased.[2] Further, the issue in *After Hour Welding* was not whether the trial court or counsel should conduct

[2] The distinction, I think, is significant. After all, at a hearing on whether extraneous prejudicial information came to the jury, the juror-witnesses would not be on the "hot seat" (with the possible exception of a juror who may have been the source of such information). The jurors' credibility would rarely be at issue and cross-examining questions rarely would be needed to uncover the truth. By contrast, however, in a hearing on juror bias, the juror necessarily occupies the "hot seat," credibility often is at issue, and cross-examining questions may be crucial.

Factually, *After Hour Welding, Inc. v. Laneil Management Co.*, 108 Wis. 2d 734, 324 N.W.2d 686 (1982), is somewhat difficult to analyze because, in a sense, it presents a mixed situation—that is, it is a case in which the extraneous information was introduced by jurors who may have been biased. Analytically, therefore, the following two hypothetical situations may be more helpful in clarifying the "hot seat" distinction I am attempting to draw:

(1) Twelve unbiased jurors are deliberating. A bailiff walks in and tells them, "Incidentally, I think you should know that the defendant has numerous prior convictions for the same kind of crime." The twelve jurors remain unbiased, but the fairness of the verdict has been destroyed by the introduction of extraneous information. At the postconviction motion hearing, the jurors will be witnesses, but the only witness on the "hot seat" will be the bailiff.

(2) Eleven unbiased jurors are deliberating. What they do not realize, however, is that the twelfth juror is the brother of the victim. Although he never discloses that to the other eleven, and although no extraneous information ever comes to them, the fairness of the verdict has been destroyed by juror bias. At the postconviction motion hearing, only the twelfth juror will occupy the "hot seat," and rightfully so.

The "hot seat" status of the jurors in these two hypothetical situations is significantly different. The procedures productive of a fair postconviction hearing in each may be very different as

39

the questioning. Thus, *After Hour Welding* does not stand for the remarkable proposition that, in a hearing to examine a juror's possible bias, a trial court may never exercise discretion to allow counsel to question the juror.

I certainly can conceive of circumstances in which a trial judge, properly exercising discretion, would conclude that he or she should pose all of counsels' and the court's questions. Yet I cannot conceive of any circumstance in which a trial judge, as a matter of law, should be prohibited from exercising discretion to allow counsel to question a juror whose possible bias is at issue. In this case, although twice indicating that counsel likely would be allowed to question the juror, the trial court ultimately denied defense counsel the chance to do so. The record reflects no explanation for the trial court's change of heart. The record reflects no exercise of discretion. The record overall, however, suggests that the trial court's preclusion of questioning by defense counsel was in keeping with its intention to make the hearing "as easy for [the juror] as possible." This, once again, apparently blurred the trial court's focus on "the fairness of the proceeding." Therefore, I conclude that the trial court also failed to exercise lawful discretion in deciding whether counsel would be allowed to question the juror.

### (3) Counsel's additional and follow-up questions

Regardless of whether counsel or the court posed the questions, the majority concludes that "Delgado is partially correct, however, when he asserts that the

well. Thus, the *After Hour Welding* standard of the first hypothetical simply does not satisfy the needs of the second.

trial court erroneously limited the scope of its inquiry." Majority op. at 25. I agree. I do not agree, however, that the omission of the defense questions was "*de minimis*." Majority op. at 30.

Although I do have some disagreement with the majority's assessment of which additional questions should have been permitted, rather than parsing out the questions and debating their relevance to juror bias, I think it is far more important to consider all the questions and the overwhelming impression gained from the entire hearing. The conclusion, I think, is inescapable: as conducted by the trial court, the hearing did nothing more than provide the juror the opportunity to declare her fairness. Indeed, true to its stated intention, the trial court did make the hearing "as easy for her as possible."

Thus, whether the trial court should have posed counsel's additional and follow-up questions or permitted counsel to do so, the failure of anyone to ask those questions (and perhaps others that could have logically followed) allowed a juror of dubious credibility to declare her fairness without the slightest concern that, in the trial court's reassuring prefatory words, she was "in any trouble." With the juror's answers unchallenged and her credibility untested, the transcript provides the questions and answers to which one could point in order to proclaim that the juror was unbiased. The record as a whole, however, allows only for the conclusion that a meaningful hearing never took place.

### (4) Defendant's request to call additional jurors as witnesses

The majority correctly explains that, in this case, because our prior reversal recognized that the juror had not responded accurately on voir dire, no testi-

mony from other jurors was necessary to determine whether the juror failed to reveal potentially prejudicial information. Majority op. at 31–32. The majority, however, leaps from that undisputed proposition to the unconnected conclusion that Delgado was properly precluded from calling other jurors to testify regarding the juror's comments. The leap is neither legal nor logical.

What the juror said to other jurors during deliberations may be critical to a court's evaluation of the juror's credibility and possible bias. To restrict a hearing to the juror's account of his or her comments during deliberations—to preclude testimony from the only eleven people who could counter the juror's account—is to preempt a fair evaluation of credibility and bias.

Because the trial court did not conduct or permit counsel to conduct a meaningful examination of the juror and, therefore, because it is impossible to know what the juror might have testified in a full and fair hearing, it is impossible to say whether additional jurors would have been necessary. It is clear, however, that in order to evaluate the juror's credibility and determine her possible bias, testimony from other jurors might prove to be relevant. Therefore, on remand, I would instruct the trial court to defer the decision of whether to allow additional jurors to testify until the completion of a meaningful examination of the juror whose credibility and bias are at issue. If, at that point, it is clear that the determinations of credibility and possible bias may turn on the juror's account of what she said during deliberations, other jurors should be permitted to testify.

### (5) Conclusion

By the time this sexual assault case came before the trial court for its second postconviction evidentiary

42

hearing, the record established that the juror had failed to answer important voir dire questions accurately, and had failed to provide a plausible explanation for that failure. The record also established that, during deliberations, the juror confronted a holdout juror with an argument for conviction based on the revelation of her own sexual assault victimization—the very information she had concealed during voir dire. Although it remains possible that, despite these facts, a trial court could conclude that the juror was unbiased, such a conclusion cannot be reached based on the record of this hearing.

Quite obviously, the trial court failed to exercise discretion as one would when determining what procedures a fact-finder should employ in order to undertake the careful and perhaps uncomfortable evaluation of the credibility of a juror—particularly a juror who has given considerable reason for concern about her credibility. Instead, the trial court carried out the analysis seeking to make the hearing "as easy for her as possible." The trial court accomplished that goal; that goal, however, was not the purpose of the hearing we ordered.

We remanded this case for a meaningful hearing to determine the juror's possible bias. That hearing has yet to take place. Therefore, I would remand again and require the trial court not only to be considerate of the juror and all other witnesses who may testify, but also to exercise discretion in fashioning procedures to assure "the fairness of the proceeding." In determining whether Delgado should be present, and in selecting both the questions and questioners, I would require the trial court to exercise discretion with full concentration on "the fairness of the proceeding," not on the often incompatible concern for making the hearing "as easy

for [the juror] as possible." Accordingly, I respectfully dissent.