STATE of Wisconsin, Plaintiff-Respondent,

v.

Carlos R. DELGADO, Defendant-Appellant-Petitioner.

Supreme Court

*No. 96–2194–CR. Oral argument October 8, 1998.—Decided January 21, 1999.*

(Also reported in 588 N.W.2d 1.)

271

For the defendant-appellant-petitioner there were briefs by *Joseph E. Schubert* and *Brennan & Collins*, Milwaukee and oral argument by *Joseph E. Schubert*.

For the plaintiff-respondent the cause was argued by *Paul Lundsten*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

¶ 1. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE. This is a review of a published decision of the court of appeals, *State v. Delgado*, 215 Wis. 2d 16, 572 N.W.2d 479 (Ct. App. 1997), which affirmed an order of the Circuit Court for Milwaukee County, Jeffrey A. Kremers, Judge. The order of the circuit court denied defendant Carlos R. Delgado's motion for a new trial.

¶ 2. The issue presented is whether the circuit court erroneously exercised its discretion in denying the defendant's motion for a new trial. The circuit court's denial of the defendant's motion for a new trial is based on the circuit court's finding that juror C.[1] was not biased against the defendant and that the defendant therefore was accorded a fair trial with an impartial jury.

¶ 3. The defendant was convicted by a jury of six counts of first degree sexual assault of two young girls. Juror C. failed to disclose during *voir dire* that she had

---

[1] We follow the practice of the court of appeals in using this designation for the juror.

been a victim of a sexual assault when she was a child. Juror C. revealed this fact during jury deliberations.

¶ 4.  The circuit court found no actual or inferred juror bias. We conclude that the circuit court's finding of no inferred juror bias is clearly erroneous because it is not supported by the record. As a result, the circuit court's finding that the defendant failed to demonstrate that it was more probable than not under the facts and circumstances surrounding this case that the juror was biased against the defendant was also clearly erroneous.

¶ 5.  Because the circuit court denied the defendant's motion for a new trial based on findings that were clearly erroneous, we conclude that the circuit court's denial of the defendant's motion for a new trial was an erroneous exercise of discretion. Accordingly we reverse the decision of the court of appeals and the order of the circuit court denying the defendant's motion for a new trial. We remand the cause to the circuit court for further proceedings not inconsistent with this opinion.[2]

I

¶ 6.  The facts are undisputed for purposes of this review. On January 29, 1993, the defendant was convicted by a jury of six counts of first degree sexual assault on two girls who were ages 7 and 9 when the assaults occurred.

¶ 7.  During *voir dire* the circuit court asked each prospective juror to answer eight questions of a bio-

---

[2] Because we reverse the decision of the court of appeals and remand the cause, we need not, and do not, reach other issues raised.

graphical nature. The sixth question was "whether you have ever been a victim or witness to a crime."

¶ 8.   Juror C. did not disclose in response to this question that she had been a victim of sexual assault when she was a child. Juror C. stated that she worked at an institution of higher learning, that she had never before served on a jury and that she had "not been a victim or witness of a crime."

¶ 9.   The assistant district attorney asked juror C. the following question: "In connection with your [employment], have you had occasion to deal with any sexual abuse issues involving children or adult survivors of sexual abuse?" Juror C. answered, "No, I have not." She did not take this opportunity to disclose that she had been sexually assaulted as a child or that she herself was an adult survivor of sexual assault.

¶ 10.   The assistant district attorney asked the entire jury panel whether there were "any members of the jury panel who have any experience working with children." In response, several prospective jurors raised their hands, including juror C., who stated, "I coached 7 and 8 year olds in soccer and I also coach within the. . .school system forensics and I also taught in boy scouts and girl scouts." The assistant district attorney then asked juror C. whether "in any of those context[s], have you ever become aware of or has it been reported to you anything about any of those kids being victims of sexual abuse?" The juror responded with a simple "No," and again did not take the opportunity to disclose her own experience of childhood sexual assault.

¶ 11.   The assistant district attorney's next question to the entire jury panel was the following: "Are there any members of the jury panel who either have a close friend or close relative or you yourself who have

been the victim of a sexual assault, either as a child or as an adult?" In response, several people on the panel raised their hands. One woman stated that her 5-year-old nephew was sexually assaulted by a distant relative, that the incident was reported to the police and that the matter was now going to trial. One man said that his girlfriend's child was sexually abused at the age of 2 or 3 by a former boyfriend and that the abuse had been reported to child protective services. A third juror stated that a good friend of hers was sexually abused from the age of 6 or 7 to the age of sixteen by her father, but that the incidents had not been reported to the police.

¶ 12. After these three prospective jurors finished answering, the assistant district attorney then asked, "Is there anybody else who I missed?" In response, a fourth panelist raised his hand. He explained that his wife was abused by her older brother for a year when she was 8 and that when she was older she was the victim of a date rape. He stated that neither incident had been reported to the police.

¶ 13. After the fourth prospective juror finished answering, the assistant district attorney again asked the entire panel, "Is there anybody on the jury panel who I missed on this question?" No additional panel members responded, and juror C. sat silent.

¶ 14. Later in *voir dire*, defense counsel asked juror C. about her duties at work and the ages of the children with whom she worked. In answering, juror C. again failed to raise the issue of her childhood sexual assault.

¶ 15. Two of the four prospective jurors who reported incidents in which people close to them had been victims of sexual assault sat on the jury.

¶ 16.    After trial, on February 18, 1993, the circuit court received a letter from another juror. The letter stated: "During deliberations, a juror revealed that she had been a victim of sexual assault or abuse but did not provide this information under questioning prior to the trial." This juror later identified juror C. as the person who failed to disclose the sexual assault. The circuit court transmitted the letter to counsel and discussed the matter with counsel a number of times over the next few months as the sentencing phase proceeded. After a judgment of conviction was entered on July 14, 1993, defense counsel filed a motion for a new trial based upon the substance of the juror's letter to the circuit court.

¶ 17.    On September 9, 1993, the circuit court (Circuit Judge John J. DiMotto) held a hearing on the defendant's motion for a new trial, with juror C. as the only witness. Defense counsel asked juror C.: "During the course of *voir dire*, questions were asked of potential jurors as to whether or not they had ever been victims of a sexual assault. Do you recall those questions being asked?" In response, juror C. stated, "The way I understood it and heard it is were you ever a victim of a crime. . . .I'm saying that I understood that it was not a crime because it was never reported." Juror C., however, said she did recall other members of the panel describing on the record various incidents in which people close to them had been victims of sexual assaults that were never reported. In response to questions posed by the assistant district attorney, juror C. testified that she answered all questions on *voir dire* honestly as she understood them at the time and that she did not harbor any bias or prejudice against the defendant because he was charged with a sexual assault.

¶ 18. The circuit court (Circuit Judge John J. DiMotto) found juror C.'s testimony to be credible and concluded that the *voir dire* question whether the jurors themselves, their friends or relatives were victims of sexual assault was vague. The circuit court explained that "based on the drafting of the question, the way the question was phrased, I do not find based on her testimony here today that she incorrectly or incompletely answered that question." The circuit court therefore held that the first part of the test for juror bias set forth by this court in *State v. Wyss*, 124 Wis. 2d 681, 370 N.W.2d 745 (1985),[3] was not satisfied and denied the motion for a new trial. The first part of the *Wyss* test is that the defendant must demonstrate that the juror incorrectly or incompletely responded to a material question on *voir dire*. *Wyss*, 124 Wis. 2d at 726.

¶ 19. The defendant appealed. On March 28, 1995, in an unpublished opinion, the court of appeals held that the defendant had satisfied the first part of the *Wyss* test. The court of appeals held that the record clearly established that juror C. incorrectly or incompletely responded to the material questions of whether she had been "a victim to a crime," or "a victim of a sexual assault" by not answering these questions during *voir dire*. The court of appeals further concluded that despite the juror's belief that she had answered the questions correctly and completely and despite the circuit court's assessment that her testimony was credible, the juror's responses were neither complete nor correct.

---

[3] *State v. Wyss*, 124 Wis. 2d 681, 370 N.W.2d 745 (1985), was overruled in part, on grounds not relevant to this case, by *State v. Poellinger*, 153 Wis. 2d 493, 504–05, 451 N.W.2d 752 (1990).

¶ 20. The court of appeals remanded the cause to the circuit court to determine the second part of the *Wyss* test, that is, whether the defendant in this case demonstrated under the facts and circumstances surrounding the particular case that it was more probable than not that juror C. was biased against the defendant. *Wyss*, 124 Wis. 2d at 726.

¶ 21. On remand, the circuit court (Circuit Judge Jeffrey A. Kremers) held an evidentiary hearing. Juror C. testified that when she was 6 or 7 years old she was sexually assaulted by a person whom she knew but who was not a relative. She also stated that only one assault had occurred over 40 years before and that it had not been reported.

¶ 22. In response to questions by the circuit court, juror C. further testified that during jury deliberations only one of the other jurors believed that the State had not proved its case against the defendant. At one point during deliberations, juror C., in anger, said to the holdout juror, "You don't know what it feels like, but I happen to know what it feels like to be taken advantage of." According to juror C., the holdout juror replied, "Why didn't you report it during *voir dire*?" Juror C. also stated at this hearing that at no time during the trial did she hold any bias or prejudice against the defendant.

¶ 23. In ruling on the defendant's motion for a new trial, the circuit court (Judge Jeffrey A. Kremers) concluded that the second part of the *Wyss* test was not satisfied and denied the motion for a new trial. The second part of the *Wyss* test is that the defendant in this case must demonstrate that it is more probable than not that under the facts and circumstances surrounding the particular case, the juror was biased against the defendant. *Wyss*, 124 Wis. 2d at 726. The

278

circuit court found that "the evidence is overwhelming that in this case [juror C.] was an impartial juror who based her verdict solely on the evidence without any influence or bias from her prior victimization."

¶ 24. The defendant appealed this second circuit court order denying him a new trial. A divided court of appeals affirmed the order and held that based upon "the juror's testimony that she was not biased against Delgado, which the trial court found to be credible, this finding is not 'clearly erroneous.' " *Delgado*, 215 Wis. 2d at 32. The court of appeals concluded that there was no evidence in the record demonstrating that juror C. harbored an actual bias against the defendant. The court of appeals further stated that no "facts and circumstances [were] demonstrated from which bias may be inferred." *Delgado*, 215 Wis. 2d at 33.

## II

¶ 25. The defendant asserts that his federal[4] and state[5] constitutional rights to be tried by an impartial jury have been violated. The defendant bases his claim on juror C.'s having given incorrect or incomplete responses to material questions posed during *voir dire* and on juror C.'s close emotional connection with the charges in this case.

¶ 26. The *voir dire* "serves to protect that right [to trial by an impartial jury] by exposing possible biases, both known and unknown, on the part of potential jurors." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984). The effectiveness of *voir dire* depends upon the thorough and well-rea-

---

[4] U.S. Const. amend. VI.

[5] Wis. Const. art. I, § 7.

soned questions posed by counsel and the circuit court, as well as the accuracy and completeness of the answers provided by prospective jurors. Deficiencies in either the questions asked or answers given during *voir dire* may result in the seating of jurors who hold undiscovered or undisclosed biases against a defendant.

¶ 27. We have repeatedly stated that this court is reluctant to grant new trials, *State v. Hicks*, 202 Wis. 2d 150, 161, 549 N.W.2d 435 (1996), and that jury verdicts should not be impeached easily. *After Hour Welding v. Laneil Management Co.*, 108 Wis. 2d 734, 744, 324 N.W.2d 686 (1982). Nevertheless, the value of finality and the sanctity of a jury verdict must yield when juror bias undermines confidence in the fairness and impartiality of the trial.

¶ 28. The parties agree, and we conclude, that this case is governed by the *Wyss* decision. *See Wyss*, 124 Wis. 2d at 714–32. The decision whether to deny a motion for a new trial on the basis of a juror's incorrect or incomplete response to a question during *voir dire* lies within the discretion of the circuit court. *Wyss*, 124 Wis. 2d at 717. An appellate court will not reverse a circuit court's decision on a motion for a new trial when a juror fails to fully disclose information during *voir dire*, unless the circuit court erroneously exercised its discretion. A circuit court's erroneous view of the facts or the law constitutes an erroneous exercise of discretion. *Wyss*, 124 Wis. 2d at 717–18; *State v. Eison*, 194 Wis. 2d 160, 171, 533 N.W.2d 738 (1995). The term "discretion" contemplates a process of reasoning which depends on facts in the record or reasonably derived by inference from the record that yield a conclusion based on logic and founded on proper legal standards. *Shuput*

*v. Lauer*, 109 Wis. 2d 164, 177–78, 325 N.W.2d 321 (1982). The record on appeal must reflect the circuit court's reasoned application of the appropriate legal standard to the relevant facts of the case. *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981).

¶ 29. The circuit court's findings on actual and inferred bias are findings of fact and will not be reversed unless clearly erroneous. Wis. Stat. § 805.17(2); *Johnson v. Agoncillo*, 183 Wis. 2d 143, 159, 515 N.W.2d 508 (Ct. App. 1994); *State v. Olson*, 179 Wis. 2d 715, 720, 508 N.W.2d 616 (Ct. App. 1993); *State v. Louis*, 152 Wis. 2d 200, 208, 448 N.W.2d 244 (Ct. App. 1989).

### III

¶ 30. The *Wyss* decision sets forth a two-part test to determine whether a new trial should be granted upon a claim that a juror gave an incorrect or incomplete response to a question during *voir dire*. To be awarded a new trial upon such a claim, the defendant in this case must demonstrate: "(1) that the juror incorrectly or incompletely responded to a material question on *voir dire*; and, if so, (2) that it is more probable than not that under the facts and circumstances surrounding the particular case, the juror was biased against the moving party." *Wyss*, 124 Wis. 2d at 726.

¶ 31. The court of appeals in its first decision held that the first part of the *Wyss* test was met. Juror C. incorrectly or incompletely responded to material questions on *voir dire* asking whether she had been a victim of sexual assault. This issue is not before us.

¶ 32. The only issue presented to this court relates to the second part of the *Wyss* test, that is,

whether under the facts and circumstances surrounding the present case, it is more probable than not that juror C. was biased against the defendant. *See Wyss*, 124 Wis. 2d at 726.

■

¶ 33.   According to *Wyss*, the bias, that is, the partiality of a juror, may be actual, implied or inferred.[6] *Wyss*, 124 Wis. 2d at 730. The failure of a juror in a sexual assault case to answer correctly or completely a question during *voir dire* about his or her experience of sexual assault does not constitute bias *per se*. *Olson*, 179 Wis. 2d at 720–21. Whether a juror answers a particular question on *voir dire* honestly or dishonestly, or whether an incorrect or incomplete answer was inadvertent or intentional, are factors to be considered in determining whether the juror was biased against the defendant. *Wyss*, 124 Wis. 2d at 730. In this case the circuit court found that juror C. was honest, acted in good faith and did not purposely give an incorrect or incomplete answer. The circuit court found that there was no actual juror bias. We conclude that that finding of fact is not clearly erroneous.

---

[6] The *Wyss* case uses the phrase "actual bias" as set forth in Wis. Stat. § 805.08 (1989–90) to mean that "the prospective juror 'has expressed or formed any opinion, or is aware of any bias or prejudice in the case.'" *Wyss*, 124 Wis. 2d at 730. The *Wyss* case uses the phrase "implied bias" to mean the type of bias set forth in § 805.08 based upon "specific grounds that will automatically disqualify prospective jurors without regard to whether that person is actually biased, i.e., if 'the juror is related by blood or marriage to any party or to any attorney appearing in this case, or has a financial interest in the case.'" *Wyss*, 124 Wis. 2d at 730. Implied bias is not an issue in this case.

¶ 34.  *Wyss* explains, however, that bias may be inferred from the facts and circumstances surrounding the prospective juror's answers during *voir dire. Wyss*, 124 Wis. 2d at 730. Inferred bias is a factual finding that turns on an evaluation of the facts and circumstances, including those surrounding the challenged juror's incorrect or incomplete response to questions during *voir dire.* A finding that a juror was honest and truthful and had no actual bias does not foreclose a finding of inferred bias.

¶ 35.  In determining inferred bias, a circuit court should consider the following factors, among others:

>   (1)   did the question asked sufficiently inquire into the subject matter to be disclosed by the juror;

>   (2)   were the responses of other jurors to the same question sufficient to put a reasonable person on notice that an answer was required;

>   (3)   did the juror become aware of his or her false or misleading answers at anytime during the trial and fail to notify the trial court?

*Wyss*, 124 Wis. 2d at 731.

¶ 36.  The circuit court did not consider these factors in determining inferred bias. Yet these factors support a finding of inferred bias when applied to the facts of this record.

¶ 37.  As to the first factor, the circuit court (Judge John J. DiMotto) at the first hearing found the following question to be vague and insufficient to alert juror C. of what was being asked: "Are there any members of the jury panel who either have a close friend or close relative or you yourself who have been the victim of a sexual assault, either as a child or as an adult?"

¶ 38.  The court of appeals ruled in its first decision that the question, on its face, constituted an

283

inquiry into the subject matter of a juror's prior personal knowledge or experience of sexual assault. The court of appeals also concluded that the question was sufficient to prompt juror C. to disclose her own childhood assault. Nothing in the record supports a conclusion that the phraseology of the question justified juror C.'s silence.

¶ 39.   As to the second *Wyss* factor, only one reasonable conclusion can be drawn from the record: the responses of other jurors to the same question were sufficient to put juror C. on notice that she should divulge any sexual assault she may have suffered. Four members of the *voir dire* panel described the sexual assault or abuse experienced by their close friends and relatives, including both reported and unreported incidents. The statements of these four jurors should have put juror C. on notice that she should reveal her unreported sexual assault.

¶ 40.   As to the third *Wyss* factor, juror C.'s testimony demonstrates, without question, that juror C. became aware of her failure to answer the *voir dire* question correctly and completely during jury deliberations. Juror C. testified that she was confronted during jury deliberations by the holdout juror, who asked, "Why didn't you report it during *voir dire*?" At that moment, if not before, juror C. became aware that she had incorrectly or incompletely responded to the *voir dire* question. She did not, however, notify the circuit court at that time or at any other time until called to testify at the post-conviction hearing.

¶ 41.   The circuit court did not carefully examine these facts and circumstances to determine whether juror C.'s bias might be inferred. In finding no inferred bias, the circuit court relied on its finding that juror C. was honest and credible and relied on its conclusion

that simply being a victim of sexual assault does not make a person predisposed to decide a case in a particular way.

¶ 42. We agree with the circuit court that a juror's honesty is an important factor in determining inferred bias and that being a victim of sexual assault does not *per se* predispose the person to a particular result in a sexual assault case. The circuit court, however, did not examine juror C.'s responses during *voir dire* and her post-trial testimony to determine whether from an objective standard they revealed bias. The circuit court failed to consider that although a juror might believe he or she is impartial and the circuit court may find no actual juror bias, the juror's conduct might have revealed such a close connection between the juror and the case that bias may be inferred. This is such a case for the following reasons.

¶ 43. Juror C. was a victim of the same type of sexual assault as the crimes with which the defendant was charged. The charge of sexual assault on young girls and juror C.'s experience of a sexual assault as a child are closely connected. Although the assault on juror C. had occurred many years before, it understandably might have had a deep and lasting effect on her.

¶ 44. Juror C. withheld material information about her sexual assault even though the information was expressly and repeatedly sought and other jurors responded appropriately. Juror C. disclosed the information in a moment of anger during jury deliberations. Even when juror C. must have realized that she had not been totally forthright during *voir dire*, she failed to disclose the problem to the circuit court.

¶ 45. The probability that juror C.'s substantial emotional involvement would adversely affect her

impartiality was high. Her emotional involvement was demonstrated by the close similarity of her experience with the crimes charged, her incorrect and incomplete responses during *voir dire*, her revelation of her experience during jury deliberations, and her failure to report her omission to the court.

¶ 46. Although juror C.'s responses during *voir dire* were honest and made in good faith, and although she stated that she had no actual bias against the defendant and the circuit court so found, we conclude that the circuit court's finding of no inferred juror bias was clearly erroneous because it was not supported by the record.

¶ 47. On the basis of our review of the facts and circumstances surrounding this case and use of the *Wyss* methodology, we conclude that juror bias may be inferred in this case and that it is therefore more probable than not that juror C. was biased against the defendant.

¶ 48. The court of appeals did not assess the circuit court's failure to consider whether juror bias could be inferred. Rather, the court of appeals in conclusory fashion, without reviewing the evidence, decided that no facts or circumstances existed from which bias might be inferred. *Delgado*, 215 Wis. 2d at 33.

¶ 49. Because the circuit court exercised its discretion to deny the defendant's motion for a new trial on a clearly erroneous finding of fact of no inferred bias, we conclude that the circuit court's denial of the defendant's motion for a new trial was an erroneous exercise of discretion.

¶ 50. When a circuit court erroneously exercises its discretion we may remand the matter to the circuit court to exercise discretion or may decide the issue ourselves if the record permits. We do not remand this

matter for exercise of its discretion because the record leaves no doubt that bias is to be inferred from the facts and circumstances of this case under *Wyss*.

¶ 51.   Accordingly, we reverse the decision of the court of appeals and the order of the circuit court denying the defendant's motion for a new trial. We remand the cause to the circuit court for further proceedings not inconsistent with this opinion.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court.