**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**September 22, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2020AP1057**

**STATE OF WISCONSIN**

Cir. Ct. No. 2018TP181

**IN COURT OF APPEALS
DISTRICT I**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO N.M., A PERSON UNDER THE
AGE OF 18:

STATE OF WISCONSIN,

       PETITIONER-RESPONDENT,

  V.

J.M.W.,

       RESPONDENT-APPELLANT.

       APPEAL from an order of the circuit court for Milwaukee County: MARK. A. SANDERS, Judge. *Affirmed*.

¶1    WHITE, J.[1]  J.M.W. appeals the circuit court's order terminating her parental rights to her child, N.M., on the petition of the Milwaukee County Department of Human Services.  She asks this court to reverse the termination order and remand to the circuit court for a new dispositional hearing.  She argues that the circuit court erroneously exercised its discretion because it misapplied the "harm to the child" factor when finding that termination of J.M.W.'s rights was in the best interests of the child.  For the reasons stated below, we conclude that termination was not an erroneous exercise of discretion, and accordingly, we affirm.[2]

## BACKGROUND

¶2    J.M.W. is the biological mother of N.M.  In August 2017, the Division of Milwaukee Child Protective Services took N.M. into temporary physical custody because J.M.W. exposed N.M. to domestic violence and J.M.W.'s conduct was negatively impacted by alcohol use.  On August 2, 2018, the State filed a petition to terminate J.M.W.'s parental rights to N.M. because N.M. remained in continuing need for protection or services (continuing CHIPS).

¶3    J.M.W. pleaded no contest on the issue of whether grounds existed for the termination of her parental rights.  The trial court conducted a thorough colloquy with J.M.W. on the decision to plead no contest.  To prove the grounds, the State called Zach Holler, the family case manager for N.M.'s case at SaintA (the Agency).  Holler testified that when the petition was filed in August 2017, J.M.W. admitted she drank on a daily basis, although now she reported only three to four times per

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2017-18).  All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] N.M. filed a separate appeal challenging the termination of her mother's parental rights.  That appeal in case number 2020AP964 is also assigned to this court and will be addressed in a separate decision.

week. J.M.W. smelled of alcohol and had slurred speech in Holler's interactions with her; additionally, she had not successfully completed AODA counseling. Holler testified that he did not believe J.M.W. could meet the conditions of return in the next nine months. The trial court made a finding of J.M.W.'s parental unfitness after the State established the elements of the CHIPS claim.[3]

¶4      At the dispositional hearing on January 24, 2020, the circuit court reviewed the six statutory factors of WIS. STAT. § 48.426(3), which the court must consider in determining N.M.'s best interests with regards to terminating J.M.W.'s parental rights.[4]

---

[3] This case transferred from the Honorable Christopher R. Foley to the Honorable Mark A. Sanders during a judicial rotation in August 2019. For ease of reading, Judge Foley will be referred to as the trial court and Judge Sanders as the circuit court.

[4] When the court considers the best interests of the child in the disposition of a TPR action, it considers, but is not limited to, the following six factors:

> (a) The likelihood of the child's adoption after termination.
>
> (b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.
>
> (c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.
>
> (d) The wishes of the child.
>
> (e) The duration of the separation of the parent from the child.
>
> (f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

WIS. STAT. § 48.426(3).

¶5 For the first factor, the likelihood of adoption, the circuit court considered it highly likely that the current foster parents would adopt N.M. if she were available to adopt. In the general sense of adoptability, N.M. was only less adoptable because of her age. The circuit court considered this factor to support termination.

¶6 The second factor is the age and health of the child at the time of this disposition; the circuit court indicated that N.M. is eleven years old and healthy. The circuit court considered this factor to be neutral on the issue of termination.

¶7 The circuit court stated that for the third factor, N.M. had a substantial relationship with her mother, which stemmed from N.M.'s over eight years in J.M.W.'s care, J.M.W.'s seventy-eight percent visit attendance rate, and the efforts of the foster family to maintain the mother-child relationship. The relationship between N.M. and J.M.W. was evolving because J.M.W.'s visits and phone calls to N.M. have decreased over time. It was obvious to everyone in the courtroom that it would be harmful to N.M. to sever the legal relationship with J.M.W., but some of the harm could be mitigated by ongoing contact after the TPR. Some of the harm that N.M. would experience existed because she believed that she would be able to return to her mother as soon as J.M.W. got stable housing. N.M. is in this position because J.M.W. has made promises to N.M. about coming home. N.M. does not have an accurate picture of the impact of J.M.W.'s alcohol use on the State's safety concerns regarding her return to J.M.W. and that the issue is not only housing instability. The circuit court considered this factor to weigh against termination, concluding it was clear that N.M. has a substantial relationship with J.M.W. and there would be harm to N.M. from severing the legal relationship, some which could be mitigated but some which would remain.

¶8    The fourth factor is N.M.'s wishes. The circuit court stated that it is clear that N.M. wants to be with J.M.W. The weight of this factor increases with age. It is valuable for N.M. to feel that her wishes have been understood, but no factor is absolute. The circuit court considered this factor to weigh against termination.

¶9    The fifth factor is the duration of separation between N.M. and J.M.W., which is two years, four months, and twenty-five days, which amounts to twenty-one percent of her life. The circuit court considered this factor to be generally neutral, although decreasing contact in the last year supported termination.

¶10    The sixth factor is whether N.M. would be able to enter into a more stable and permanent family relationship through termination. Because of the current foster mother's education in social work and personal experience working with kids after foster care, the circuit court thought there was a very good likelihood of success. The circuit court concluded there was a low likelihood that N.M. could be returned to J.M.W.'s care in the future based on her alcohol issues and housing instability.

¶11    The circuit court stated that the ultimate question it had to answer was whether granting the TPR allowed N.M. to enter into a more stable and permanent family relationship compared to the alternatives. First, the court did not think a return to J.M.W. was possible at that time. Second, a guardianship was proposed, which had the advantage of continuing a legal relationship between N.M. and J.M.W., but also had the disadvantage of less stability and permanence. The third option was TPR, with probable adoption by the current foster family. The advantages were stability, an ability to make decisions for N.M., and control over

visitation if J.M.W.'s alcohol use became a problem. The disadvantages were that N.M. did not want it and N.M. would not feel that her voice was heard.

¶12    The circuit court acknowledged the tension between the factors, but decided that the "likelihood of adoption, the stability and duration of separation tend to weigh in favor of termination, and the harm that [N.M.] will suffer is balanced and her wishes are balanced against that." Although the balance was close, the greater degree of stability offered by the foster parents and probable adoption weighed in favor of termination sufficiently that the circuit court found that termination of J.M.W.'s parental rights was in the best interest of N.M. J.M.W. appeals.

## DISCUSSION

¶13    J.M.W. argues that the circuit court erroneously exercised its discretion in concluding that termination was in N.M.'s best interests. J.M.W. contends that the circuit court applied an incorrect legal standard to factor three of WIS. STAT. § 48.426(3). J.M.W. argues that the circuit court did not consider only the best interests of the child in its analysis of factor three, but the court erroneously minimized the harm N.M. would suffer by attributing parts of the harm to J.M.W. She argues that the statutes require the court to determine whether the child would suffer harm from legally severing the relationship between parent and child, not to weigh the harm the child would suffer against the conduct of the parent. "The best interests of the child shall be the prevailing factor considered by the court in determining the disposition" of a petition for termination of parental rights. WIS. STAT. § 48.426(2). The best interests of the child standard is defined in relationship to the child, not in terms of a parent's compliance with conditions in the dispositional order. *Sheboygan Cty DHS v. Julie A.B.*, 2002 WI 95, ¶38, 255

6

Wis. 2d 170, 648 N.W.2d 402; *Sallie T. v. Milwaukee Cty DHHS*, 219 Wis. 2d 296, 311, 581 N.W.2d 182 (1998), *abrogated on other grounds by Village of Trempealeau v. Mikrut*, 2004 WI 79, 273 Wis. 2d 76, 681 N.W.2d 190.

¶14     Whether the termination of parental rights is in the best interests of the child is a discretionary decision by the circuit court. *Gerald O. v. Cindy R.*, 203 Wis. 2d 148, 152, 551 N.W.2d 855 (Ct. App. 1996). We will not overturn a circuit court's discretionary decision unless the court erroneously exercised its discretion. WIS. STAT. § 805.17(2). "A circuit court's erroneous view of the facts or the law constitutes an erroneous exercise of discretion." *State v. Delgado*, 223 Wis. 2d 270, 280, 588 N.W.2d 1 (1999). A circuit court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law, and using a demonstrated rational process reaches a conclusion that a reasonable judge could reach. *Dane Cty DHS v. Mabel K.*, 2013 WI 28, ¶39, 346 Wis. 2d 396, 828 N.W.2d 198.

¶15     The record shows that all parties—including the circuit court—acknowledged that N.M. would be harmed by severing the legal relationship between N.M. and J.M.W. N.M.'s foster mother and case manager each testified to N.M.'s attachment to her mother and her unwavering desire to return to her mother. The circuit court found there was a substantial relationship between N.M. and J.M.W., but that relationship was evolving by decreased contact between N.M. and J.M.W. in the last year. J.M.W. identifies two issues that she argues were erroneous for the circuit court to consider in its analysis of factor three: (1) that J.M.W. made promises to N.M. that she could return when J.M.W. had stable housing; and (2) that N.M. does not have an accurate understanding of her mother's alcohol abuse and its impact on her inability to be returned to J.M.W.

¶16   The State argues that the court's harm analysis properly considered all relevant evidence. During the dispositional hearing, the trial court should consider all relevant evidence "including 'any factors favorable to the parent,'" and must consider at minimum the six statutory factors. *Steven V. v. Kelley H.*, 2004 WI 47, ¶27, 271 Wis. 2d 1, 678 N.W.2d 856 (citation omitted). The State argues it was not improper for the court to take into consideration the fact that N.M.'s relationship with her mother and her desire to be returned to her care was heavily influenced by the information shared with her. The State asks us to recognize that the adults caring for N.M. shielded her from the severity of her mother's alcohol abuse issues and sought to preserve the relationship between mother and daughter; therefore, it was not an error for the circuit court to take those actions into account.

¶17   J.M.W. does not challenge the circuit court's conclusions for factor three, but she argues that the process was wrong because the court considered this additional evidence. She asserts that the circuit court deviated from applicable legal standards by finding that N.M.'s harm was minimized by J.M.W.'s promises and N.M.'s false impressions. She argues that this negates the court's rational process to consider the facts and law; however, we disagree. Here, all evidence relevant to the proceedings included that there was a changing relationship between N.M. and J.M.W., that J.M.W.'s untreated alcohol problems prevented N.M. from safely returning home, that N.M. was not aware of the extent of J.M.W.'s alcohol issues or the State's safety concerns, and that N.M.'s understanding of the situation was shaped by adult caretakers. Therefore, we conclude that the circuit court employed a rational process to consider the facts under the law.

¶18   The circuit court is not limited to the six statutory factors when it considers whether termination of parental rights was in the best interests of the child. *See* WIS. STAT. § 48.426(3). Our supreme court held that the harm analysis

8

"requires courts to assess the harmful effect of this legal severance on the emotional and psychological attachments the child has formed with his or her birth family." *State v. Margaret H*, 2000 WI 42, ¶26, 234 Wis. 2d 606, 610 N.W.2d 475. The emotional and psychological bonds are influenced by the parent's actions that make them stronger or weaker. The circuit court considered factor three thoroughly. We disagree with J.M.W.'s characterization of the circuit court's process as a subtractive analysis of harm. The circuit court stated that ongoing contact with J.M.W. after an adoption might mitigate some of N.M.'s harm, but it still concluded there would be harm to N.M.

¶19 J.M.W. argues that the circuit court considered information it should not have, but we are unpersuaded that the standard she proposes exists under Wisconsin law. The circuit court is required to consider the statutory factors, but here, the circuit court did a thorough job explaining its reasoning to terminate J.M.W.'s parental rights. The circuit court found that factor three weighed against termination. It acknowledged that N.M. would suffer harm. It also found that factor six and the opportunity for N.M. to enter stable relationships through adoption weighed in favor of termination and in the balance of factors and evidence, terminating J.M.W.'s parental rights was the appropriate course of action. We defer to the circuit court's determination of the proper weight of each factor when the court properly examined each factor on the record. *Id.*, ¶35; *Julie A.B.*, 255 Wis. 2d 170, ¶30. Here, the circuit court properly considered the J.M.W.'s conduct and actions when it reviewed all evidence relevant to factor three.

¶20 J.M.W.'s argument that the circuit court might have considered alternates like guardianship if it had not minimized N.M.'s harm is entirely speculative. Although J.M.W. asserts that the statutory factors do not permit the court to determine the harm the child would suffer by subtracting the harm the court

9

attributes to a parent's conduct or characteristics, she does not provide a legal basis for this assertion. The circuit court is required to give adequate consideration of and weight to each factor, but no one factor dictates the disposition of the proceedings. *See Margaret H.*, 234 Wis. 2d 606, ¶35. Here, the circuit court properly considered the substantial relationship between mother and daughter and whether it would be harmful to N.M. to sever that legal relationship. It specifically considered the emotional and psychological bonds between N.M. and J.M.W. The record shows the tension in the factors that the circuit court acknowledged, but it is our task to search for evidence to support the circuit court findings, "not for evidence to support findings the trial court could have reached but did not." *Noble v. Noble*, 2005 WI App 227, ¶15, 287 Wis. 2d 699, 706 N.W.2d 166. Here, the record shows that the circuit court examined each factor and considered the best interests of N.M. when it terminated J.M.W.'s parental rights.

¶21 The circuit court was fully within its discretion to decide that termination was in N.M.'s best interests because it examined the relevant facts, applied the proper standard of law, and demonstrated a rational process. The circuit court reached a conclusion a reasonable court could have made. Accordingly, we conclude that the circuit court did not erroneously exercise its discretion and we affirm.

¶22 For the foregoing reasons, we affirm the circuit court.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)(4).

10